1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  GERAWAN FARMING, INC.,                    CASE NO. 1:11-cv-01273 LJO BAM

11            Plaintiff,                       ORDER ON DEFENDANT'S MOTION TO
                                               DISMISS
12        vs.
                                               (Doc. 11)
13  REHRIG PACIFIC COMPANY,

14            Defendant.

15  _____/

16        Now pending before the Court is Defendant Rehrig Pacific Company's ("Rehrig's") motion to

17  dismiss.  Plaintiff Gerawan Farming, Inc. ("Gerawan") has filed an opposition, and Rehrig has filed a

18  reply.  Upon consideration of the parties' submissions and the record in this case, the Court GRANTS

19  IN PART and DENIES IN PART the motion to dismiss.

20  **I.        BACKGROUND**

21        **A.      Factual Background**

22        Gerawan is in the business of producing and distributing fresh produce.  In 1993, Gerawan and

23  Rehrig, a manufacturer of plastic-molded containers for industrial use, reached an agreement to patent,

24  manufacture, and sell the "Harvest Tote," a container for holding stone fruits such as peaches during

25  harvesting.  The agreement ("the Harvest Tote Agreement") provided that (1) Gerawan's founder, Ray

26  Gerawan,[1] would provide the initial design for the Harvest Tote; (2) Gerawan would share in the cost

27  of patenting the Harvest Tote; (3) the patent claims related to the Harvest Tote would be jointly owned;

28
    _____
        [1] Ray Gerawan's relevant interests are assigned to Gerawan.  (Doc. 1, Compl., ¶ 20.)

                                                1

1   (4) Rehrig would be granted an exclusive license to sell the Harvest Tote; and (5) Rehrig would pay

2   royalties to Gerawan from sales of the Harvest Tote.

3       During the parties' collaboration on the Harvest Tote in 1993, Rehrig filed a patent application

4   for U.S. Patent No. 5,415,293, entitled "Grape Lug" ("the '293 Patent"). The '293 Patent relates to a

5   container used for harvesting, storing, and transporting grapes. Among other characteristics, the '293

6   Patent includes patent claims for "the configuration of eight side columns and an upper portion, which

7   is recessed, in contrast with a lower portion, which has a doubling of material[,] which is characteristic

8   of the Harvest Tote." (Doc. 1, Compl., ¶ 12.) The '293 Patent, however, does not name Ray Gerawan

9   as a co-inventor of the Grape Lug.

10      Some time in 2001, Rehrig discontinued making royalty payments to Gerawan for sales of the

11   Harvest Tote. At that time, Gerawan was under the impression that the payments were discontinued

12   because sales of the Harvest Tote had fallen to the point where no royalty payments were warranted.

13   However, in 2008 Gerawan discovered that Rehrig had made significant sales of the Harvest Tote for

14   several years without paying Gerawan royalties. Gerawan also discovered that Rehrig developed and

15   claimed exclusive ownership of a new container for produce ("the Second Generation Harvest Tote"),

16   which appears to have been derived from the design of the Harvest Tote.

17      **B.    Procedural History**

18      Gerawan initiated this action on July 29, 2011. In its complaint, Gerawan asserts eight causes

19   of action: (1) correction of inventorship under 35 U.S.C. § 256; (2) conversion; (3) unfair competition

20   in violation of California Business and Professional Code Section 17200 *et seq.*; (4) unjust enrichment;

21   (5) concealment; (6) false promise; (7) unfair competition in violation of 15 U.S.C. § 1125(a); and (8)

22   accounting. On December 9, 2011, Rehrig filed the instant motion to dismiss pursuant to Federal Rule

23   of Civil Procedure 12(b)(6). In response, Gerawan filed an opposition on January 3, 2012, and Rehrig

24   filed a reply on January 17, 2012. This matter was deemed suitable for decision without oral argument

25   pursuant to Local Rule 230(g).

26   **II.    LEGAL STANDARD**

27      A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the

28   legal sufficiency of a claim presented in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

2

1 | 2001).  Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged

2 | under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper.  Balistreri v. Pacifica Police

3 | Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

4 |       To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to

5 | state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

6 | (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

7 | to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

8 | Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  While "[t]he plausibility standard is not akin

9 | to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

10 | unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  Naked assertions, "labels and conclusions," or

11 | "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

12 | See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by

13 | mere conclusory statements, do not suffice.").

14 |       In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of

15 | the complaint as true and construes the pleadings in the light most favorable to the party opposing the

16 | motion.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, the court may

17 | disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit.

18 | Id.  The court may also disregard allegations that are "conclusory" or are the product of unreasonable

19 | deductions and inferences.  Id.  Finally, if the court concludes that dismissal under Rule 12(b)(6) is

20 | warranted, the court should not dismiss the complaint "unless it determines that the pleading could not

21 | possibly be cured by the allegation of other facts."  Cook, Perkiss & Liehe, Inc. v. Northern California

22 | Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

23 | **III.**     **DISCUSSION**

24 |     **A.**     **Federal Claims**

25 |         **1.**     **Correction of Inventorship**

26 |       Gerawan claims that its founder, Ray Gerawan, was omitted as a co-inventor of the '293 Patent

27 | and therefore seeks a court order correcting the issued patent.  Rehrig argues that this claim should be

28 | dismissed because Gerawan has failed to allege facts sufficient to show that Ray Gerawan contributed

1   in a significant manner to the conception of the '293 Patent such that he should be named a co-inventor

2   in the issued patent.

3       The issuance of a patent "creates a presumption that the named inventors are the true and only

4   inventors." Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citing

5   Hess v. Advanced Cardiovascular Sys., 106 F.3d 976, 980 (Fed. Cir. 1997)).  However, if an inventor

6   is not named in an issued patent through error and without any deceptive intention on his part, a court

7   may order correction of the patent.  See 35 U.S.C. § 256; Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466,

8   1471 (Fed. Cir. 1997).  A court may correct either a misjoinder (the patent names a person who is not

9   an inventor) or a nonjoinder (the patent omits the name of a person who is an inventor).  See Stark v.

10  Advanced Magnetics, 119 F.3d 1551, 1553 (Fed. Cir. 1997).

11      "Conception is the touchstone" in determining inventorship.  Burroughs Wellcome Co. v. Barr

12  Laboratories, Inc., 40 F.3d 1223, 1227 (Fed. Cir. 1994).  Conception is the "formation in the mind of

13  the inventor[] of a definite and permanent idea of the complete and operative invention[.]"  Id. (citation

14  and internal quotation marks omitted).  To be a joint inventor, an individual must "contribute in some

15  significant manner to the conception of the invention."  Fina Oil & Chem., 123 F.3d at 1473.  "[M]erely

16  assisting the actual inventor after conception of the claimed invention;" providing the actual inventor

17  well-known principles or state of the art without having a definite idea of the claimed combination as

18  a whole; or "reducing the [actual] inventor's idea to practice" through ordinary skill in the art does not

19  give rise to a claim for joint inventorship.  Ethicon, 135 F.3d at 1460.

20      A joint inventor need not make a contribution to the conception of every claim of a patent, nor

21  even the same amount of contribution as another inventor.  See 35 U.S.C. § 116.  Rather, each inventor

22  need only "perform . . . a part of the task which produces the invention."  Ethicon, 135 F.3d at 1460.

23  "A contribution to one claim is enough."  Id. at 1461 (citation omitted).  Thus, in the end, "the critical

24  question for joint conception is who conceived, as that term is used in the patent law, the subject matter

25  of the claims at issue."  Id.

26      The patent claims at issue in this case pertain to the walls of the Grape Lug, specifically "the

27  configuration of eight side columns and an upper portion, which is recessed, in contrast with a lower

28  portion, which has a doubling of material[.]" (Doc. 1, Compl., ¶ 12.) Gerawan alleges that these claims

4

are "characteristic" of the Harvest Tote, which Ray Gerawan provided the "initial design" for as part of the Harvest Tote Agreement.  (Id. ¶¶ 9, 12.)  Gerawan notes that only after Rehrig received the design for the Harvest Tote did it file its patent application for the '293 Patent.  When viewed in the light most favorable to Gerawan, these facts suggest that Ray Gerawan conceived the distinct wall construction as part of his work on the Harvest Tote and this distinct construction was incorporated in the claims of the '293 Patent.  This gives rise to a facially plausible claim for correction of inventorship under 35 U.S.C. § 256.  Accordingly, Rehrig's motion to dismiss is DENIED with respect to this claim.

### 2.    Unfair Competition Under the Lanham Act

Gerawan claims that Rehrig's conduct constitutes a false designation of origin, affiliation, or sponsorship in violation of the Lanham Act, 15 U.S.C. § 1125(a).  Specifically, Gerawan claims that Rehrig falsely and wrongfully suggested that it is the sole inventor or source of the Harvest Tote and the Second Generation Harvest Tote.  Rehrig counters that Gerawan's allegations fail to state a cognizable claim under the Lanham Act.

Section 1125(a) provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> * * *
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Simply put, § 1125(a) "makes a person liable for using a false description of origin in connection with any goods or services put into commerce." Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984).  Its central purpose is to "protect consumers against deceptive designations of the origin of goods, and conversely, to enable producers to differentiate their products from those of others." Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 918 (9th Cir. 1980).

///

5

1    The essence of Gerawan's claim here is that Rehrig made false descriptions of origin when it

2    used Ray Gerawan's design for the Harvest Tote but failed to credit Ray Gerawan as a joint inventor or

3    source of origin of the Harvest Tote or the Second Generation Harvest Tote.  This theory of liability,

4    however, relies on an incorrect construction of the word "origin" as it is used in § 1125(a).  "Origin of

5    goods" refers to the producer of the tangible goods offered to consumers for sale, not the inventor or

6    creator of the patentable designs that the goods embody.  See Dastar Corp., v. Twentieth Century Fox

7    Film Corp., 539 U.S. 23, 31-32, 37 (2003).  As the Supreme Court explained:

8    > [Section 1125(a)] of the Lanham Act prohibits actions like trademark infringement that
9    > deceive consumers and impair a producer's goodwill. It forbids, for example, the
     > Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off
10   > Pepsi-Cola as its product. But the brand-loyal consumer who prefers the drink that the
     > Coca-Cola Company or PepsiCo sells, while he believes that that company produced (or
11   > at least stands behind the production of) that product, surely does not necessarily believe
     > that that company was the "origin" of the drink in the sense that it was the very first to
12   > devise the formula. *The consumer who buys a branded product does not automatically
     > assume that the brand-name company is the same entity that came up with the idea for
13   > the product, or designed the product--and typically does not care whether it is. The
     > words of the Lanham Act should not be stretched to cover matters that are typically of
     > no consequence to purchasers.*

14

15   Id. at 32-33 (emphasis added).  Here, it is clear that Rehrig produced the Harvest Tote and the Second

16   Generation Harvest Tote.  Therefore, any claim that Gerawan should have been identified as a source

17   of origin of those goods must fail.

18   Gerawan's reliance on this Court's decision in GNI Waterman LLC v. A/M Valve Co., LLC,

19   Case No. CV F07-0863 LJO TAG, 2007 U.S. Dist. LEXIS 68715 (E.D. Cal. Sept. 7, 2007) is misplaced.

20   In GNI Waterman, the plaintiff and the defendant were direct competitors in the production and sale of

21   irrigation canal gates.  The plaintiff alleged that the defendant misappropriated the plaintiff's product

22   design patterns to create canal gates that were identical to plaintiff's in every material respect yet sold

23   under the defendant's name.  Based on these allegations, this Court concluded that the plaintiff stated

24   a cognizable claim under § 1125(a).

25   The claim in GNI Waterman rested on a theory of "reverse palming off," which is actionable

26   under § 1125(a).  See Smith v. Montoro, 648 F.2d 602, 605-06 (9th Cir. 1981).  Reverse palming off

27   generally occurs when the wrongdoer takes another party's product, removes the party's trademark or

28   name as the origin of source, and sells the product under the wrongdoer's own name. See Lamothe v.

1  Atlantic Recording Corp., 847 F.2d 1403, 1406 (9th Cir. 1988).  In concluding that the plaintiff stated

2  a claim for reverse palming off, this Court reasoned that appropriating a competitor's design pattern for

3  the purpose of recreating identical products to be sold under one's own name is essentially the same as

4  taking a competitor's product, removing the party's name as the origin of source, and selling it under

5  the defendant's name.  See GNI Waterman, 2007 U.S. Dist. LEXIS 68715, at *10-13.  Both scenarios

6  implicated the central purpose of § 1125(a): the protection of consumers from deceptive designations

7  of the origin of goods and enabling producers to differentiate their products from those of others.  See

8  Int'l Order of Job's Daughters, 633 F.2d at 918.

9         Those circumstances are absent here.  Gerawan produces no products or services related to the

10  Harvest Tote or the Second Generation Harvest Tote for consumers.  It is simply a patent co-owner.  As

11  such, the central ingredient for a reverse palming off claim is missing: the confusion of consumers by

12  one party taking the *products or services* of another and representing them as its own.  Accordingly, this

13  claim is DISMISSED.  Furthermore, because amendment of this claim would be futile, it is dismissed

14  without leave to amend.

15         **B.      State Law and Common Law Claims**

16         Rehrig moves to dismiss Gerawan's state law and common law claims on the grounds that the

17  claims are insufficiently pled, are not cognizable, are preempted by federal patent law, and are time-

18  barred.  The Court first addresses whether Gerawan alleges a cognizable claim for (1) conversion; (2)

19  false promise; (3) fraudulent concealment; (4) unjust enrichment; (5) unfair competition under Section

20  17200; and (6) accounting.  The Court then discusses whether these claims are time-barred under the

21  relevant statutes of limitations.

22         **1.      Conversion**

23         Gerawan claims that Rehrig (a) withheld royalty payments due from sales of the Harvest Tote

24  and the Second Generation Harvest Tote; and (b) wrongfully exercised control over Gerawan's interest

25  in the '293 Patent.  In its motion to dismiss, Rehrig argues that Gerawan's allegations regarding unpaid

26  royalties give rise to a breach of contract, not conversion, and that in any event, unspecific amounts of

27  money cannot be the subject of a claim for conversion.  With respect to the '293 Patent, Rehrig argues

28  that Gerawan's claim is preempted by federal patent law.

1

### a.      Royalty Payments

2    "A conversion occurs where the defendant wrongfully exercises dominion over the property of

3    another."  Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir. 2008) (citations

4    omitted).  In California, the elements of a claim for conversion are: (1) the plaintiff's ownership or right

5    to possession of property at the time of the conversion; (2) the defendant's conversion by a wrongful act

6    or disposition of property rights; and (3) damages.  Plummer v. Day/Eisenberg, LLP, 184 Cal. App. 4th

7    38, 45 (Ct. App. 2010).

8        Although "[n]either legal title nor absolute ownership of the property [at issue] is necessary" to

9    maintain a claim for conversion, "a mere contractual right of payment, without more, will not suffice."

10   Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 452 (Ct. App. 1997).  For example, in Imperial

11   Valley Land Co. v. Globe Grain & Milling Co., 187 Cal. 352 (1921), landowners brought a claim for

12   conversion against cotton growers for breaking a lease agreement that required the growers to tender

13   one-fourth of their crop as rent.  The California Supreme Court rejected the claim, reasoning that the

14   lease did not give the landowners any property interest in the cotton crop itself because it did not give

15   title to nor create a lien upon the crop.  Id. at 353-54.  Rather, the one-fourth amount simply represented

16   the rental rate, which the growers failed to pay.  Id. at 354.  This gave rise to an ordinary debt, not a

17   claim for conversion.  Id.

18        In this case, there is nothing to suggest that the royalty payments due to Gerawan amounted to

19   anything more than a contractual right to payment.  Gerawan does not allege that it had an ownership

20   interest in, or the right to immediate possession of, the *specific* proceeds from the sales of the Harvest

21   Tote and the Second Generation Harvest Tote.  Cf. Weiss v. Marcus, 51 Cal. App. 3d 590, 599 (Ct. App.

22   1975) (where an attorney has a secured interest in settlement proceeds by way of an attorney's lien, he

23   may proceed with a claim for conversion when another person exercises dominion over the proceeds).

24   Rather, Gerawan simply alleges that under the Harvest Tote Agreement, Rehrig agreed to pay certain

25   royalties based on sales of the Harvest Tote.[2]  This allegation, when combined with the allegation that

26   Rehrig failed to pay royalties to Gerawan after 2001, gives rise to a debt and a breach of contract, not

27

28
       [2] It is unclear on what basis Gerawan claims to be entitled to royalty payments for sales of the Second Generation
     Harvest Tote.  Presumably, Gerawan asserts that under the Harvest Tote Agreement, Gerawan is entitled to royalties on any
     iteration of the Harvest Tote.

8

1    a claim for conversion.

2        Moreover, "[m]oney cannot be the subject of a cause of action for conversion unless there is a

3    specific, identifiable sum involved[.]" PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &

4    Shapiro, LLP, 150 Cal. App. 4th 384, 395 (Ct. App. 2007).  Here, Gerawan fails to identify a specific

5    sum of money that Rehrig allegedly converted.  The general allegation that Rehrig failed to pay certain

6    royalties over the span of almost ten years does not sufficiently identify a specific sum of money.  See

7    Vu v. California Commerce Club, Inc., 58 Cal. App. 4th 229, 235 (Ct. App. 1997) ("[A] generalized

8    claim for money [is] not actionable as conversion."); Software Design & Application, Ltd. v. Hoefer &

9    Arnett, Inc., 49 Cal. App. 4th 472, 485 (Ct. App. 1996) (no conversion claim where money was allegedly

10   misappropriated by the defendant "over time, in various sums, [and] without any indication that it was

11   held in trust for" the plaintiffs).

12       Accordingly, for all these reasons, Gerawan's claim for conversion regarding unpaid royalties

13   is DISMISSED with leave to amend.

14               **b.    The '293 Patent**

15       State law claims that frustrate the objectives embodied in the federal patent scheme are subject

16   to conflict preemption.  See Ultra-Precision Mfg. v. Ford Motor Co., 411 F.3d 1369, 1378 (Fed. Cir.

17   2005).  Thus, in a patent case, federal preemption occurs whenever a state law impermissibly attempts

18   to provide patent-like protection to subject matter addressed by federal patent law.  See Bonito Boats

19   v. Thunder Craft Boats, 489 U.S. 141, 156-57, 168 (1989); Dow Chemical Co. v. Exxon Corp., 139 F.3d

20   1470, 1473 (Fed. Cir. 1998).

21       In the specific context of a conversion claim, courts have differentiated between claims that are

22   dependent on a determination of patent inventorship or ownership and those that are based on a non-

23   patent theory of conversion.  Claims that are dependent on a determination of patent inventorship or

24   ownership, such as a misappropriation of patent rights, are generally preempted by federal patent law.

25   See Smith v. Healy, 744 F. Supp. 2d 1112, 1130 (D. Or. 2010) ("Plaintiffs' proposed conversion claim

26   does not concern Plaintiffs' tangible property but rather their intangible idea . . . therefore . . . Plaintiffs'

27   proposed conversion claim would be preempted by [federal] patent law.").  In contrast, claims that can

28   be established without reference to patent inventorship or ownership are generally not preempted by

1  federal patent law.  See HIF Bio, Inc. v. Yung Shin Pharms. Industrial Co., 600 F.3d 1347, 1354 (Fed.

2  Cir. 2010) (suggesting that plaintiffs could establish a conversion claim not preempted by federal law

3  by basing their claim on defendants' alleged misappropriation of experiments, experimental data, and

4  non-public drafts of papers).

5       Here, Gerawan alleges that "[Rehrig] substantially interfered with Gerawan's rightful property

6  by omitting Ray Gerawan as an inventor" and as such, "wrongfully exercised control over Gerawan's

7  rights in . . . the '293 Patent[.]" (Doc. 1, Compl., ¶¶ 25-26.)  In other words, Gerawan claims that Rehrig

8  misappropriated Gerawan's patent rights.  Such a claim is preempted by federal patent law.  See GE v.

9  Wilkins, 1:10-cv-0674-OWW-JLT, 2011 U.S. Dist. LEXIS 81479, at *26-28 (E.D. Cal. 2010) (finding

10  conversion claim preempted where the counter claimant alleged that the counter defendant wrongfully

11  interfered with counter claimant's ownership interest as an inventor in certain patents).  Accordingly,

12  Gerawan's claim for conversion regarding its "ownership interest" in the '293 Patent is DISMISSED

13  with leave to amend.

14       **2.    False Promise**

15       Gerawan claims that Rehrig falsely promised that patent claims derived from the Harvest Tote

16  would be jointly owned.  Rehrig moves to dismiss this claim on the ground that Gerawan has failed to

17  allege facts with specificity regarding the alleged false promise.  Rehrig takes particular issue with the

18  absence of facts showing that Rehrig knew the alleged promise was false or misleading at the time the

19  promise was allegedly made.

20       A false promise is defined as "[a] promise, made without any intention of performing it."  Cal.

21  Civ. Code § 1710.  In California, a cause of action may lie where a defendant uses a false promise to

22  fraudulently induce the plaintiff into entering a contract.  Lazar v. Superior Court, 12 Cal. 4th 631, 638

23  (1996).  To establish such a claim, the plaintiff must show: (1) the defendant made a promise; (2) the

24  defendant knew the promise was false at the time it was made; (3) the defendant intended to induce the

25  plaintiff's reliance; (4) the plaintiff actually and justifiably relied on the promise; and (5) the plaintiff

26  suffered damages as a result of his reliance on the promise.  See Engalla v. Permanente Med. Group,

27  Inc., 15 Cal. 4th 951, 973-74 (1997).

28  ///

A claim for false promise is grounded in fraud and thus is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Vess v. Ciba-Geity Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (explaining that state claims based on fraud are subject to Rule 9(b)).  Under Rule 9(b), a defendant's state of mind may be "alleged generally," but the circumstances constituting fraud must be pled with "particularity."  Fed. R. Civ. P. 9(b).  In other words, the party claiming fraud must set forth facts such "as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."  Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).  It is insufficient for the party claiming fraud to simply identify a transaction and allege that it was fraudulent in a conclusory manner.  See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superceded by statute on other grounds.  The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to provide defendants notice of the claims against them.  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

The allegations regarding Gerawan's claim for false promise are sparse.  Gerawan alleges that "in or around 1993" it reached an agreement with Rehrig in which, among other things, it promised Gerawan that patent claims related to the Harvest Tote would be jointly owned.  (Doc. 1, Compl., ¶¶ 9-10.)  Gerawan goes on to suggest that Rehrig had no intention of keeping this promise, as demonstrated by the fact that soon after, Rehrig omitted Ray Gerawan from the '293 Patent which includes "one or more claims to which Ray Gerawan made an inventive contribution [to]" in connection with his work on the Harvest Tote.  (Id. ¶ 12.)

Without more, these allegations fall short of satisfying the "particularity" requirement of Rule 9(b).  Absent are specific details regarding where and on what date the parties reached the agreement; who was involved in the negotiation of the agreement; who made the promise regarding joint ownership of the patent claims; what was the exact promise made; in what context was the promise made; and why was the promise so important to Gerawan in reaching the agreement.  The heightened pleading standard of Rule 9(b) requires at least this much.[3]  See Vess, 317 F.3d at 1106 ("Averments of fraud must be

---

[3] Gerawan need not, however, allege with particularity why Rehrig's promise was false at the time it was made, as Rehrig argues Gerawan must do.  It is true in the context of false *statements* that a party claiming fraud must explain why the alleged statement was false when it was made and that simply pointing to subsequent, inconsistent statements or actions is often insufficient in this regard.  See GlenFed, 42 F.3d at 1548-49.  However, in the context of false *promises*, the inquiry

accompanied by the who, what, when, where, and how of the misconduct charged."). Accordingly, this claim is DISMISSED with leave to amend.

### 3.    Fraudulent Concealment

Gerawan claims that Rehrig fraudulently concealed the existence of the '293 Patent and the Second Generation Harvest Tote.  Rehrig moves to dismiss these claims on the grounds that Gerawan has failed to allege facts demonstrating that Rehrig had a duty to disclose this information to Gerawan as a mere business partner in the Harvest Tote.

In California, a claim for fraudulent concealment consists of five elements: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Kaldenbach v. Mutual of Omaha Life Ins. Co., 178 Cal. App. 4th 830, 850 (Ct. App. 2009) (citations and internal quotation marks omitted).  Because a claim for fraudulent concealment, like a claim for false promise, is grounded in fraud, it is subject to the heightened pleading standard of Rule 9(b).  See Grant v. Aurora Loan Servs., 736 F. Supp. 2d 1257, 1273 (C.D. Cal. 2010).

There are four circumstances in which a duty to disclose may arise such that nondisclosure or concealment constitutes actionable fraud: (1) when a fiduciary relationship exists between the parties; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes a partial representation to the plaintiff while suppressing other material facts.  See LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (Ct. App. 1997).  "The first circumstance requires a fiduciary relationship; each of the other three 'presupposes the existence of some other relationship between the plaintiff and

_____

is not whether a particular statement was truthful (a matter that is typically proven by reference to external, objective facts) but whether a promise was genuine (a matter that often requires proof of a person's intentions and state of mind).  See Cal. Civ. Code § 1710 (defining false promise as a promise "made without any *intention* of performing it") (emphasis added). Under Rule 9(b), "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Therefore, it is sufficient at this juncture for Gerawan to generally allege that when Rehrig made its promise to Gerawan, it had no intention of keeping it as demonstrated by Rehrig's patent application for the Grape Lug shortly after.

1  defendant in which a duty to disclose can arise.'" <u>Deteresa v. ABC</u>, 121 F.3d 460, 467 (9th Cir. 1997)

2  (quoting <u>LiMandri</u>, 52 Cal. App. 4th at 336-37).  Such a relationship must be transactional in nature.

3  <u>See LiMandri</u>, 52 Cal. App. 4th at 337.  An example is where parties form a relationship by "entering

4  into . . . [a] contractual agreement."  <u>Id.</u>

5        It is unclear on what ground Gerawan claims Rehrig had a duty to disclose the existence of the

6  '293 Patent and the Second Generation Harvest Tote; Gerawan simply states in its complaint that the

7  two companies were "business partners" and fails to provide any further explanation in its opposition.

8  (Doc. 1., Compl., ¶ 40.)  To the extent that Gerawan relies solely on its contractual relationship with

9  Rehrig to establish a duty to disclose, Gerawan's allegations are deficient.  Gerawan fails to allege any

10 specific facts demonstrating that Rehrig had exclusive knowledge of the '293 Patent or the Second

11 Generation Harvest Tote; that Rehrig *actively* tried to conceal the existence of the '293 Patent or the

12 Second Generation Harvest Tote; or that Rehrig made some partial representation to Gerawan relating

13 to the '293 Patent or the Second Generation Harvest Tote.  Indeed, at first blush, the first two scenarios

14 appear to be plainly implausible in light of the fact that recording a patent with the U.S. Patent Office

15 constitutes notice to the world of its existence, <u>see</u> <u>Gen. Bedding Corp. v. Echevarria</u>, 947 F.2d 1395,

16 1397 (9th Cir. 1991), and the fact that Rehrig presumably sold the Second Generation Harvest Tote to

17 the general public.  Therefore, the only question remaining is whether a fiduciary relationship existed

18 between the parties by virtue of the two being "business partners."

19        A fiduciary relationship is "not necessarily created when one party entrusts valuable intellectual

20 property to another for commercial development in exchange for the payment of compensation [that is]

21 contingent on commercial success."  <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, 43 Cal. 4th 375,

22 391 (2008).  If, however, the arrangement arises to a "joint venture," a fiduciary relationship is created

23 among its participants as a matter of law.  <u>Id.</u> at 386.  <u>See</u> <u>Weiner v. Fleischman</u>, 54 Cal. 3d 476, 482

24 (1991) ("[J]oint venturers are fiduciaries with a duty of disclosure and liability to account for profits.")

25 (quoting 9 Witkin, Summary of Cal. Law (9th ed. 1989) Partnership, § 19, at 418).  Under California

26 law, "[a] joint venture exists when there is an agreement between the parties under which they have a

27 community of interest, that is, a joint interest, in a common business undertaking, an understanding as

28 to the sharing of profits and losses, and a right of joint control."  <u>Connor v. Great Western Sav. & Loan</u>

1  Assoc., 69 Cal. 2d 850, 863 (1963) (citation and internal quotation marks omitted).  Accord Orosco v.

2  Sun-Diamond Corp., 51 Cal. App. 4th 1659, 1666 (Ct. App. 1997).

3  As currently pled, the complaint falls short of alleging the existence of a joint venture between

4  Gerawan and Rehrig.  Gerawan alleges the following facts with respect to the Harvest Tote Agreement:

5  (1) Ray Gerawan provided the initial design of the Harvest Tote; (2) Gerawan agreed to share the costs

6  of patenting the Harvest Tote; (3) patent claims relating to the Harvest Tote were to be jointly owned;

7  (4) Rehrig was granted an exclusive license to sell the Harvest Tote; and (5) Rehrig was to pay royalties

8  to Gerawan from sales of the Harvest Tote.  When viewed in the light most favorable to Gerawan, these

9  facts arguably demonstrate a common business undertaking and an understanding as to the sharing of

10  profits, but there are no facts regarding joint control of the endeavor.  This precludes a finding of a joint

11  venture.  See Orosco, 51 Cal. App. 4th at 1666; Wiltsee v. California Employment Commission, 69 Cal.

12  App. 2d 120, 123 (Ct. App. 1945) (an interest in profits unconnected to any power of control does not

13  make one a joint adventurer).

14  Accordingly, in the absence of facts showing a duty to disclose the existence of the '293 Patent

15  or the Second Generation Harvest Tote, Gerawan's claim for fraudulent concealment is DISMISSED

16  with leave to amend.

17  **4.    Unjust Enrichment**

18  Gerawan claims that Rehrig was unjustly enriched because it failed to pay Gerawan royalties

19  from sales of the Harvest Tote and the Second Generation Harvest Tote.  Rehrig argues that there is no

20  independent, stand-alone cause of action for unjust enrichment in California.  To the extent that there

21  is, Rehrig argues that Gerawan's claim for unjust enrichment is either defeated by the existence of the

22  Harvest Tote Agreement or preempted by federal patent law.

23  California courts are split as to whether unjust enrichment constitutes a stand-alone cause of

24  action.  Some courts have recognized such a claim.  See, e.g., Peterson v. Cellco Partnership, 164 Cal.

25  App. 4th 1583, 1593-94 (Ct. App. 2008); Lectrodryer v. Seoulbank, 77 Cal. App. 4th 723, 726-28 (Ct.

26  App. 2000).  Other courts have explicitly stated that "there is no cause of action in California for unjust

27  enrichment."  Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (Ct. App. 2003).  See

28  also Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370 (Ct. App. 2010); McBride v. Boughton,

1    123 Cal. App. 4th 379, 387 (Ct. App. 2004).  These courts have explained that unjust enrichment "does

2    not describe a theory of recovery," Lauriedale Assoc. Ltd. v. Wilson, 7 Cal. App. 4th 1439, 1448 (Ct.

3    App. 1992), but rather "a general principle" that underlies "various legal doctrines and remedies[.]"

4    Melchior, 106 Cal. App. 4th at 793.

5            It appears, however, that the split is largely a dispute in semantics.  See Nordberg v. Trilegiant

6    Corp., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006).  Those courts concluding that unjust enrichment

7    is not a stand-alone cause of action have typically recharacterized the claim as one for restitution.  See

8    Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303, 320 (2003); Durell, 183 Cal. App. 4th at 1370;

9    McBride, 123 Cal. App. 4th at 388; Lauriedale, 7 Cal. App. 4th at 1448.  A claim for restitution, like a

10   claim for unjust enrichment, sounds in equity and consists of essentially the same elements: the unjust

11   retention of a benefit at the expense of another.  Compare Lectrodryer, 77 Cal. App. 4th at 726 ("[T]he

12   elements of a claim of unjust enrichment [are] receipt of a benefit and unjust retention of that benefit at

13   the expense of another."); with McBride, 123 Cal. App. 4th at 388 ("Under the law of restitution, [a]n

14   individual is required to make restitution if he or she is unjustly enriched at the expense of another.")

15   (citation and internal quotation marks omitted).  Therefore, for all relevant purposes, unjust enrichment

16   appears to be "synonymous" with restitution, which is a viable cause of action under California law.

17   Durell, 183 Cal. App. 4th at 1370.

18           Gerawan fails to state a cognizable claim regardless of whether its cause of action is construed

19   as unjust enrichment or restitution.  Under either theory of recovery, the law operates by imposing an

20   implied or quasi-contract on the parties in order to avoid unjust enrichment.  See Paracor Finance, Inc.

21   v. GE Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); McBride, 123 Cal. App. 4th at 388, n.6.  An

22   implied or quasi-contract cannot be imposed, however, where there is already a valid, express contract

23   defining the rights of the parties; the two are mutually exclusive.  Berkla v. Corel Corp., 302 F.3d 909,

24   918 (9th Cir. 2002); Paracor, 96 F.3d at 1167.  Therefore, a claim for unjust enrichment or restitution

25   cannot hinge upon the existence of a valid, express contract.  See, e.g., Gerlinger v. Amazon, Inc., 311

26   F. Supp. 2d 838, 856-57 (N.D. Cal. 2004) (plaintiff cannot bring a claim for unjust enrichment while

27   relying on the existence of a valid contract to establish standing).

28   ///

15

1    Here, Gerawan alleges that Rehrig received an unjust benefit "by not paying Gerawan royalties

2    due from sales of the Harvest Tote and of the Second Generation [Harvest] Tote." (Doc. 1, Compl., ¶

3    36.)  In order for this to constitute an unjust benefit, there must first be a basis for which Gerawan is

4    entitled to the royalties such that Rehrig's retention of the royalties is unjust.  The only basis alleged, or

5    at least the only one that can be reasonably inferred from the complaint, is that under the Harvest Tote

6    Agreement, the parties were to share ownership in the Harvest Tote and Rehrig was to pay royalties from

7    sales of the Harvest Tote.  However, if Gerawan relies on the existence of the Harvest Tote Agreement

8    to show that it was entitled to royalty payments, it cannot then turn around and argue that no agreement

9    exists such that an implied or quasi-contract should now be imposed.  This tension within Gerawan's

10   claim is fatal to the claim's viability.  See Paracor, 96 F.3d at 1167; Gerlinger, 311 F. Supp. 2d at 856.

11   Accordingly, this claim is DISMISSED with leave to amend.[4]

12              **5.       Unfair Competition Under Section 17200**

13           Gerawan claims that Rehrig's conduct constitutes unfair competition in violation of California

14   Business and Professions Code Section 17200.  Rehrig argues, among other things, that Gerawan fails

15   to state a claim under Section 17200 because Gerawan fails to allege with particularity the existence of

16   an unlawful, unfair, or fraudulent business practice.

17           California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent

18   business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  Because the statute is written in the

19   disjunctive, each prong of the UCL is a "separate and distinct theory of liability."  Kearns, 567 F.3d at

20   1127.  In other words, the UCL "applies separately to business acts or practices that are (1) unlawful,

21   (2) unfair, or (3) fraudulent."  Clark v. Countrywide Home Loans, Inc., 732 F. Supp. 2d 1038, 1050

22   (E.D. Cal. 2010) (citation omitted).

23   ///

24

25          [4] In its opposition, Gerawan asserts that in addition to withholding royalty payments, Rehrig was unjustly enriched
     by the exclusive ownership it enjoyed over the Second Generation Harvest Tote.  This assertion does not alter the Court's
26   analysis for two reasons.  First, Gerawan failed to plead this in its complaint.  In its complaint, Gerawan simply alleged that
     Rehrig was unjustly enriched by its failure to pay Gerawan royalties.  (Doc. 1, Compl., ¶¶ 36-37.)  Second, Gerawan fails
27   to allege any facts demonstrating that it is entitled to share in the ownership of the Second Generation Harvest Tote in the
     absence of the Harvest Tote Agreement.  Therefore, Gerawan's quasi-contract claim regarding ownership over the Second
28   Generation Harvest Tote fails for the same reason discussed with respect to Gerawan's quasi-contract claim for royalties.
     See Paracor, 96 F.3d at 1167; Gerlinger, 311 F. Supp. 2d at 856.

With respect to the "unlawful" prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  See Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  As to the "unfair" prong, a business practice is unfair when it "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008) (quoting People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (Ct. App. 1984)).  Finally, with respect to the "fraudulent" prong, a business practice is fraudulent "where members of the public are likely to be deceived."  Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) (citation omitted).

It is unclear on which prong Gerawan rests its UCL claim.  Indeed in its opposition, Gerawan simply asserts that its "Section 17200 claim rests on a wide range of actions touching upon patents, business collaboration, product design collaboration, competition in the marketplace and payment of royalties due." (Doc. 16, Pl.'s Opp'n, at 9.)  From what the Court can discern, it appears that Gerawan rests its UCL claims on the "unlawful" prong of the statute in that Gerawan argues that its allegations of reverse palming off and tortious conduct violate the UCL.  However, because Gerawan fails to state a claim in any of those respects, Gerawan similarly fails to state a claim under the UCL.  See Krantz v. Bt Visual Images, 89 Cal. App. 4th 164, 178 (Ct. App. 2001) (where a UCL claim is entirely derivative of another cause of action, it stands or falls with the underlying claim).  Accordingly, Gerawan's claim under the UCL is DISMISSED with leave to amend.

### 6.  Accounting

Gerawan seeks an accounting of Rehrig's profits and the unpaid royalties due from sales of the Harvest Tote and the Second Generation Harvest Tote.  An accounting is a derivative action, however, and it must be based on other claims.  Janis v. Cal. State Lottery Commission, 68 Cal. App. 4th 824, 833-34 (Ct. App. 1998).  Because Gerawan has failed to state a claim for profits and unpaid royalties, Gerawan is not entitled to an accounting.  See id. at 834.  Accordingly, this claim is DISMISSED with leave to amend.

### 7.  Statute of Limitations

A plaintiff must bring a claim within the relevant limitations period, which begins to run upon

17

1   accrual of the cause of action.  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005).  A

2   cause of action generally accrues "'when, under the substantive law, the wrongful act is done,' or the

3   wrongful result occurs, and the consequent 'liability arises.'"  Norgart v. Upjohn Co., 21 Cal. 4th 383,

4   397 (1999) (quoting 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 459, at 580).  In other words,

5   under the general rule, a cause of action accrues "'when [it] is complete with all of its elements'–those

6   elements being wrongdoing, harm, and causation."  Pooshs v. Philip Morris USA, Inc., 51 Cal. 4th 788,

7   797 (2011) (quoting Norgart, 21 Cal. 4th at 397).

8       "An important exception to the general rule of accrual is the 'discovery rule[.]'"  Fox, 35 Cal.

9   4th at 807.  Under the discovery rule, accrual is delayed "until the plaintiff discovers, or has reason to

10  discover, the cause of action."  Id. (citations omitted).  "A plaintiff has reason to discover a cause of

11  action when he or she 'has reason at least to suspect a factual basis for its [generic] elements,'" that is

12  wrongdoing, harm, and causation.  Id. (quoting Norgart, 21 Cal. 4th at 398).  The policy underlying the

13  discovery rule is to mitigate the harshness of the general rule of accrual, which would otherwise allow

14  the limitations period to expire before a plaintiff has or should have discovered a latent injury and its

15  cause.  Pooshs, 51 Cal. 4th at 797-98.

16      It is clear here that under the general rule of accrual, the majority of Gerawan's state law and

17  common law claims are untimely.  The factual underpinnings of Gerawan's claims are: (1) the parties'

18  Harvest Tote Agreement in 1993; (2) Rehrig's patent application for the '293 Patent in 1993; (3) the

19  issuance of the '293 Patent to Rehrig in 1995; (4) the discontinuance of the royalty payments related to

20  the Harvest Tote beginning in 2001; and (5) the commercialization of the Second Generation Harvest

21  Tote, the date of which the complaint does not provide.  With the exception of the commercialization

22  of the Second Generation Harvest Tote, all of these events plainly occurred at least nine years prior to

23  the initiation of this suit on July 29, 2011.  This far exceeds the three-year statute of limitations period

24  for false promise, fraudulent concealment, and conversion, see Cal. Code Civ. P. § 338(c)-(d); the four-

25  year statute of limitations period for unfair competition under the UCL, see Cal. Bus. & Prof. Code §

26  17208; and the limitations periods for unjust enrichment and accounting, which adopt the limitations

27  period of the underlying claim, see Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 347-48

28  (Ct. App. 2008) (unjust enrichment claim grounded in a mistake is governed by the three-year statute

1   of limitations period for fraud or mistake); <u>Jefferson v. J. E. French Co.</u>, 54 Cal. 2d 717, 718-19 (1960)

2   (accounting is governed by the statute of limitations for the underlying claim).

3      The dispositive question, then, is whether Gerawan has sufficiently invoked the discovery rule

4   to resuscitate its otherwise untimely claims.  "In order to rely on the discovery rule for delayed accrual

5   of a cause of action, '[a] plaintiff whose complaint shows on its face that [its] claim[s] would be barred

6   without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner

7   of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" <u>Fox</u>,

8   35 Cal. 4th at 808 (quoting <u>McKelvey v. Boeing North American, Inc.</u>, 74 Cal. App. 4th 151, 160 (Ct.

9   App. 1999)) (emphasis in the original).  The burden is "on the plaintiff to 'show diligence;' 'conclusory

10  allegations' will not withstand [a motion to dismiss]."  <u>Id.</u>

11     Gerawan only alleges two facts in its complaint relating to the discovery rule.  First, Gerawan

12  alleges that from 2001 to 2008, it believed that sales of the Harvest Tote had fallen to the point where

13  no royalty payments were due.  Second, Gerawan alleges that around August 2008, it discovered that

14  Rehrig had in fact made significant sales of the Harvest Tote after 2001 and had developed the Second

15  Generation Harvest Tote.  From these two facts, Gerawan argues in its opposition that it discovered its

16  causes of action only in August 2008, and therefore, under the discovery rule, its causes of action began

17  to accrue only at that point.

18     While Gerawan's allegations touch upon the discovery rule in a general sense, the allegations

19  fall short in terms of both scope and specificity to invoke the exception to the general rule of accrual.

20  For example, Gerawan fails to explain how it discovered the fact that Rehrig made significant sales of

21  the Harvest Tote after 2001 and developed the Second Generation Harvest Tote.  Gerawan also fails to

22  explain the circumstances in which it discovered the existence of the '293 Patent.  There are no facts

23  regarding the "time" or "manner" in which Gerawan made this discovery, nor are there any facts as to

24  why Gerawan was unable to make this discovery any earlier than it did "despite reasonable diligence."[5]

25  <u>Fox</u>, 35 Cal. 4th at 808.

26  ///

27  _____

28     [5] In its opposition, Gerawan offers an explanation as to why it could not have been expected to have discovered the '293 Patent any earlier than it did.  This explanation must be sufficient pled in its complaint, not raised for the first time in its opposition.  See <u>Fox</u>, 35 Cal. 4th at 808.

1    Accordingly, Gerawan's state law and common law claims, with the exception of those that are

2    predicated on the commercialization of the Second Generation Harvest Tote, are untimely on their face

3    and must be dismissed for this reason, in addition to any other reason already set forth above.[6]

4    **C.    Leave to Amend**

5    Gerawan will be afforded the opportunity to file an amended complaint.  See Cook, Perkiss &

6    Liehe, Inc., 911 F.2d at 247.  However, Gerawan should file an amended complaint only if it is able to

7    adequately address the deficiencies identified in this order in good faith.  Likewise, Rehrig should file

8    an attack on any amended complaint Gerawan elects to file only if Rehrig's arguments are strong and

9    substantive.  This Court simply no longer has the resources to revisit pleadings repeatedly.  Both parties

10   are reminded of their obligations under Federal Rule of Civil Procedure 11.

11   **IV.    CONCLUSION**

12   In accordance with the above, this Court:

13   1.    DENIES Rehrig's motion to dismiss with respect to Gerawan's claim for correction of

14         inventorship under 35 U.S.C. § 256;

15   2.    GRANTS Rehrig's motion to dismiss with respect to Gerawan's Lanham Act claim for

16         unfair competition under 15 U.S.C. § 1125(a) without leave to amend;

17   3.    GRANTS Rehrig's motion to dismiss with leave to amend in all other respects; and

18   4.    ORDERS Gerawan to file and serve any amended complaint it elects to submit by no

19         later than March 23, 2012.

20

21

22

23

24   IT IS SO ORDERED.

25   **Dated:     March 2, 2012**              /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE
26

27       [6] Rehrig argues that the discovery rule does not apply to claims under the UCL, and therefore this claim should be
28   dismissed with prejudice.  There appears to be some disagreement among California courts on this issue.  See Broberg v. The
     Guardian Life Ins. Co. of America, 171 Cal. App. 4th 912, 920-21 (Ct. App. 2009).  Nevertheless, this Court need not reach
     that issue now because Gerawan has, in any event, failed to invoke the discovery rule at this time.