UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., <br><br> Plaintiff, <br><br> v. <br><br> REHRIG PACIFIC COMPANY, <br><br> Defendant. | CASE NO. 1: 11-cv-01273-LJO-BAM <br><br> **ORDER DENYING PLAINTIFF'S AND DEFENDANT'S MOTIONS TO COMPEL FURTHER DISCOVERY (DOC. 43 & 44)** |

## I. INTRODUCTION

Currently before the Court are the motions of Gerawan Farming, Inc. ("Gerawan") and Rehrig Pacific Company ("Rehrig") to compel further discovery (Gerawan and Rehrig are collectively referred to as the "Parties").[1] (Doc. 43, 44.) The Parties filed joint discovery statements on February 1, 2013. (Doc. 51, 52.) The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for February 8, 2013. Having considered the joint statements of the Parties, the declarations and exhibits attached thereto, as well as the Court's file, the Parties' Motions to Compel further discovery are DENIED.

---

[1] Gerawan's Motion to Compel (Doc. 44) and Rehrig's Motion to Compel (Doc. 43) are collectively referred to as the "Parties' Motions to Compel."

## II. BACKGROUND

### A. Factual Background

Gerawan is in the business of producing and distributing fresh produce. In the summer of 1994, Gerawan and Rehrig, a manufacturer of plastic-molded containers for industrial use, reached an agreement to patent, manufacture, and sell the "Harvest Tote," a container for holding stone fruits such as peaches during harvesting (the "Harvest Tote Agreement"). During the Parties' collaboration on the Harvest Tote in 1993, Rehrig unilaterally filed a patent application for U.S. Patent No. 5,415,293, entitled the "Grape Lug" (the "293 Patent"). The 293 Patent, while conceptually similar to the Harvest Tote, relates to a container used for harvesting, storing, and transporting grapes. Gerawan claims Rehig's 293 Patent includes one or more claims to which Gerawan made an innovative contribution. However, Gerawan was not listed as a joint inventor and did not receive any royalties from sales of the Grape Lug.

Both parties operated under the Harvest Tote Agreement, and Rehrig paid Gerawan for sales of the Harvest Tote from 1995 through 2002, with the last royalty check being made to Gerawan in February 2003. Sometime in 2001-2002, Rehig began manufacturing and selling a "Second Generation Harvest Tote," without Gerawan, which was allegedly derived from the design of the original Harvest Tote. The parties dispute whether Gerawan was intended to be involved in the Second Generation Harvest Tote.

### B. Procedural Background

Gerawan initiated this action on July 29, 2011. (Doc. 1.) Gerawan asserted eight causes of action: (1) correction of inventorship under 35 U.S.C. § 256; (2) conversion; (3) unfair competition in violation of California Business and Professional Code Section 17200 *et seq.*; (4) unjust enrichment; (5) concealment; (6) false promise; (7) unfair competition in violation of 15 U.S.C. § 1125(a); and (8) accounting. (Doc. 1.)

On December 9, 2011, Rehrig filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11.) On March 2, 2012, the Court dismissed all of Gerawan's

claims,[2] except for Gerawan's first cause of action for correction of inventorship under 35 U.S.C. § 256.[3]  (Doc. 25.)

Gerawan filed an amended complaint on March 23, 2012.  (Doc. 26.)  Gerawan's first claim seeks correction of inventorship of the '293 Patent to include Ray Gerawan, the founder of Gerawan.  Rehrig disputes that Gerawan or Ray Gerawan contributed anything to the invention of the '293 Patent.  Gerawan's second claim is for false promise, alleging that Rehrig promised Gerawan in 1993 that: (1) the parties would co-own any patents resulting from the Harvest Tote; (2) Rehrig would not use any proprietary materials provided by Gerawan for any purpose other than making the Harvest Tote for Gerawan, and (3) Rehrig supposedly used that proprietary information to make the second generation harvest tote. Rehrig disputes any such promise was made. Gerawan's third claim is for a violation of California Business and Professions Code § 17200 *et seq*., which is a cause of action for unfair business practices.  This claim is derivative of the other two, and is based on the same facts.[4]

On April 16, 2012, the Parties participated in an Initial Scheduling Conference.  (Doc. 34.)  Prior to the Initial Scheduling conference, the Parties submitted an Amended Joint Scheduling Report, where the Parties proposed that all discovery (expert and non-expert) would be completed by January 18, 2013.  (Doc. 33, 10: 24-28; 11: 1-2.)  The Court accepted the Parties' joint recommendations, and on May 1, 2012, entered a Scheduling Order requiring *all* discovery (expert and non-expert) be completed by January 18, 2013.  (Doc. 37, 2: 21-23) (*All* non-expert discovery, including motions to compel, shall be completed no later than January 18, 2013.  *All* expert discovery, including motions to compel, shall be completed no later than January 18, 2013)) (emphasis added).

---

[2] The Court granted Gerawan leave to amend for the dismissed claims, except for Plaintiff's cause of action for unfair competition under 15 U.S.C. § 1125(a), which was dismissed without leave to amend.  (Doc. 25.)

[3] Gerawan's correction of inventorship claim applies to the 293 Patent.

[4] Gerawan states it will amend its complaint to add a claim of false marking pursuant to 35 U.S.C. §292 for Rehrig's "patent pending" markings of the Harvest Tote and/or Second Generation Harvest Tote.

3

**C.     Background of the Parties' Discovery Efforts**

Although a Scheduling Order was entered on May 1, 2012, neither party began to conduct discovery until October 31, 2012. (Doc. 45, 5: 15-17.) On October 31, 2012, Rehrig served written discovery requests and a deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6). Gerawan's corporate deposition was set for December 13, 2012, with the depositions of Gerawan's individual employees set for December 10th-12th of the same week. (Declaration of Jonathan P. Hersey ("Hersey Decl."), ¶3, Doc. 52, Attach. 1.)

Gerawan served its written discovery on November 9, 2012.  That same day, Gerawan's counsel informed Rehrig that none of its witnesses were available for depositions the week of December 10th, but alternate dates would be provided. On November 30, 2012, Gerawan offered to produce their witnesses for depositions between January 8th through the 11th of 2013. (Hersey Decl., ¶5.)  That same day, Gerawan served its Notice of Deposition of Jon Kalin. (Declaration of Shannon S. King ("King Decl."), Doc. 51, Attach. 2, ¶ 9, Ex. 6.)

On November 21, 2012, the Court held an Informal Telephonic Discovery Conference. (Doc. 38.) Gerawan requested an extension of the expert disclosure deadline, as well as the expert and non-expert discovery cutoff.[4] (Doc. 39.) The Court held that "[Gerawan] ha[d] failed to demonstrate good cause to modify the scheduling order . . . . However, in the interest of permitting meaningful case preparation," the Court continued the expert and non-expert discovery cutoff to February 8, 2013. (Doc. 39.) The Court further cautioned that "[n]o further modifications to the scheduling order w[ould] be permitted." *Id.*

On December 27, 2012, Rehrig responded to Gerawan's written discovery. (King Decl., ¶ 2.) On January 8, 2013, Rehrig produced an additional 275 pages of documents. On January 17, 2013, Gerawan sent a meet and confer letter outlining Gerawan's concerns with Rehrig's document production and interrogatory answers. (King Decl. ¶3 & Ex. 1.)

Subsequently, the depositions for three individuals Rehrig intended to depose were scheduled for January 23rd, 24th, and 29th of 2013.  Those same three individuals were also

---

[4] The parties stipulated to allow the Court to rule on the matter informally and off the record.  (Doc. 39.)

4

designated by Gerawan as their Rule 30(b)(6) deponents.  On January 16, 2013, Rehrig served an amended Rule 30(b)(6) notice – substantively the same as the original notice, however, providing different dates – setting the depositions for January 25, 2013.  (Hersey Decl., ¶6.)

On January 17, 2013, Gerawan requested that the Rule 30(b)(6) depositions with these witnesses be completed at the same time as their individual depositions.  The next day, Rehrig agreed to conduct the individual and Rule 30(b)(6) depositions together.  Shortly thereafter, Gerawan notified Rehrig of its objection to seven of the Rehrig's Rule 30(b)(6) topics and declined to produce witnesses for those topics.  (*See* Hersey Decl., ¶7 & Exh. B.)  The Parties met and conferred on this dispute, however, failed to come to a mutually agreeable resolution.[5] Rehrig competed these depositions on January 23, 24 and 29, respectively.

On January 17, 2013, Jon Kalin appeared for his deposition both in his personal capacity and as a Rule 30(b)(6) designee.  (Doc. 51, 10: 12-16.)  On January 25th and 28th of 2013, Rehrig made a supplemental document production which, Gerawan argues, were improperly withheld, and should have been available for Mr. Kalin's deposition.  (King Decl. ¶¶7-8, Ex. 4.)

**D.     The Parties' Motions to Compel Further Discovery**

On January 18, 2013, the Parties each filed separate motions to compel further discovery, noticing the corresponding hearings for February 8, 2013, the last day to conduct discovery. (Doc. 43, 44.)  The Parties filed their Joint Statements on February 1, 2013.  (Doc. 51, 52.)

Gerawan's Motion seeks an order: (1) compelling Rehrig to provide full and complete responses to Gerawan's First Set of interrogatories; (2) compelling Rehrig to produce relevant documents pursuant to Gerawan's First Request for Production of Documents and Things; (3) overruling Rehrig's objections to Gerawan's Rule 30(b)(6) Notice of Deposition, as well as compel Gerawan to designate appropriate witnesses; and (4) to compel relevant witnesses, specifically, Jon Kalin, to appear for a further deposition.  (Doc. 44, 2: 3-14.)

Rehrig's Motion seeks an order overruling Gerawan's objections to Rehrig's Rule 30(b)(6) Notice of Deposition, and compelling Gerawan to designate appropriate witnesses and

---

[5] Gerawan's refusal to produce witnesses for these four topics is the subject of Rehrig's Motion to Compel.

1  appear for depositions.  (Doc. 43, 2: 3-12.)

## III.    DISCUSSION

**A.    Legal Standard for Adherence to the Scheduling Order**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).  Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir.1986).

Rule 16 "recognizes the inherent power of the district court to enforce its pretrial orders through sanctions, Fed. R. Civ. P. 16(f), and the discretion of the district judge to apply an appropriate level of supervision as dictated by the issues raised by each individual case." *In re Arizona*, 528 F.3d 652, 657 (9th Cir. 2009) (citing e.g., Fed. R. Civ. P. 16(c)(2)), *cert. denied*, ––– U.S. ––––, 129 S. Ct. 2852, 174 L. Ed.2d 551 (2009).  A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610.

The Ninth Circuit has clarified why the Rule 16 deadlines should be taken seriously:

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *see also, Singh v. Arrow Truck Sales, Inc.*, 2006 WL 1867540, at *2 (E.D. Cal., July 5, 2006) ("Rules are rules – and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable

due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance"), citing *Legault v. Zambrano*, 105 F.3d 24, 28-29 (1st Cir. 1997).

The Ninth Circuit is protective of this particular rule, as it deems Rule 16 to be an essential tool in controlling heavy trial court dockets by recognizing the importance of a "district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the [party's] prior discovery efforts were not diligent." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006). "The use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one." *Id*. As the Ninth Circuit has emphasized, "[d]istrict courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." *Id*. (citation and internal quotation marks omitted).

**B.    The Parties Have Not Requested Modification of the Scheduling Order**

Neither Party has filed a Motion to amend the scheduling order.  When granting a motion to compel discovery would require amendment to the scheduling order, a parties' failure to seek modification of the scheduling order is a sufficient reason to deny the motion. *See, Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9${}^{th}$ Cir. 1992) (Noting a Court could properly deny relief that would require amendment to the scheduling order solely because a party failed to request modification to the scheduling order); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir.1985) (court may deny as untimely a motion filed after the scheduling order cut-off date where no request to modify the order has been made).

The Court cannot grant the Parties any effective relief without amending the Scheduling Order.  While the Parties' Motions were noticed and set for hearing within the discovery period, by noticing the Motions to be heard on the last day of the discovery cutoff, any relief provided by the Court would necessarily take place outside the time frame designated to complete "all"

discovery. Moreover, because the Court has already extended the discovery cutoff - despite a lack of good cause - the pretrial motion filing deadline is a mere seven (7) days from the discovery cutoff. Thus, to permit discovery beyond the current discovery cutoff would require the Court to continue the pretrial motion filing deadline and, in all likelihood, the pretrial conference and trial dates. As neither party has requested modification of the Scheduling Order, the Court will deny the Parties' Motions for this reason alone.

**C.     The Parties Motions' Are Not Timely Under the Scheduling Order**

Though the Federal Rules of Civil Procedure place no time limit on the outside date for the filing of a motion to compel discovery, motions to compel filed after the close of discovery generally are deemed untimely. *See, e.g., Watts v. Allstate Indem. Co.,* 2012 WL 5289314 (E.D. Cal., 2012); *Clinton v. California Dept. of Corporations,* 2009 WL 1308984 (E.D. Cal., 2009). "Greater uncertainty occurs where the motion is made very close to the discovery cut-off date." *In re Sulfuric Acid*, 231 F.R.D. 331, 333 (N.D. Ill. 2005). Generally, "the matter is left to the broad discretion possessed by the district courts to control discovery." *Id*.

Several courts have determined compliance with the discovery cutoff requires motions to compel be filed *and heard* sufficiently in advance of the cutoff so that the Court grant effective relief within the allotted discovery time. *See, e.g., Watts v. Allstate Indem. Co.,* 2012 WL 5289314 (E.D. Cal., October 23, 2012) ("Motions to compel such discovery had to have been heard 30 days before [the discovery] cutoff in order for discovery to be completed by the cutoff."); *Lacy v. American Biltrite, Inc*., 2012 WL 909309 at *8 (S.D. Cal., March 16, 2012) ("the discovery cutoff includes hearings on motions to compel and discovery ordered as a result of a motion to compel"); *Everett v. Aldi, Inc.,* 2009 WL 940379 (N.D. Ind., Apr. 6, 2009) (Noting that "several district courts have articulated that '[w]here a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion'") (internal citations omitted); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, 2004 WL 3021842, at *6 (N.D. Ill. Dec.30, 2004) (denying motion to compel where plaintiff filed it four days before the close of discovery and failed to file a Local Rule 37.1

statement); *In re Sulfuric Acid*, 231 F.R.D. at 332–42 (denying motion to compel in part where it was filed on the last day of the discovery period); *West v. Miller*, 2006 WL 2349988, at *6 (N.D. Ill. Aug.11, 2006) (denying motion to compel where plaintiff filed it eleven days before the discovery deadline and other factors, such as months of discovery inaction, indicated undue delay); *Grey v. Dallas Indep. Sch. Dist.*, 265 Fed.Appx. 342, 348 (5th Cir. 2008) (In this unpublished decision, the Fifth Circuit found that the district court did not abuse its discretion in denying a motion to compel discovery when "it was filed on the day of the discovery deadline after an extensive discovery period.")

Each of the Parties' Motions is noticed for hearing on the last day of discovery. The Parties have submitted 423 pages of joint statements, declarations and exhibits, seeking to compel multiple depositions, further interrogatory responses and supplemental document production. While the Parties' Motions are timely, technically, the Scheduling Order requires *all* discovery to be completed by February 8, 2013. (Doc. 37, 2: 21-23; Doc. 39.) By noticing the hearings on their respective Motions to Compel for the last day of discovery, the Court is without the means to provide any effective relief prior to the discovery cutoff.[6] The Court would be ordering discovery be conducted after the discovery cutoff date. Without modifying the scheduling order, the Court cannot provide the Parties any relief. Thus, the Parties' Motions are not timely.

**D.    There Is No Good Cause To Amend The Scheduling Order**

Once in place, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). As the Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it

---

[6] The Parties filed their Motions to Compel on January 18, 2013. (Doc. 43, 44.) Under the Local Rules, if the Parties had lodged their Joint Statements concurrently with their Motions to Compel, the Court could have heard the matter up to two weeks before the discovery cutoff, thereby permitting the Court to grant effective relief within the discovery period. *See,* L.R. 251(a).

cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

"Good cause may be found to exist where the moving party shows that it diligently assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order." *Kuschner v. Nationwide Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009).

Neither Party has articulated good cause to modify the Scheduling Order.  Regardless, the Court finds no good cause to amend the Scheduling Order.  The parties were not diligent in pursuing discovery.  At the scheduling conference, the parties represented to the Court they would require approximately nine (9) months to complete discovery.  The Court provided the Parties with the precise scheduling dates requested.  Six (6) months passed before efforts to engage the discovery process were undertaken.  At that point, despite the Parties' lack of good cause, the Court extended the discovery cutoff in the interest of meaningful case preparation.  However, because the Court had continued the discovery cutoff to one week before the pretrial motion filing deadline, the Court admonished the parties that "no further continuances would be permitted."

Notwithstanding this admonishment, the Parties did not engage in depositions until two-to-three weeks before the *continued* discovery cutoff.  This delay may be attributable to a lack of cooperation between the Parties.  Discovery disputes, however, are a common component of any

1 civil matter and they should be anticipated.  Discovery disputes are not the sort of event that
2 renders a litigant "unable to comply with the scheduling order's deadlines due to matters that
3 could not have reasonably been foreseen at the time of the issuance of the scheduling order."
4 *Kuschner v. Nationwide Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009).

5       Whether by virtue of circumstance or design, the Parties did not diligently undertake their
6 discovery obligations.  That this case became plagued with discovery disputes at the eleventh
7 hour is of no consequence.  The parties have not shown that the engaged in diligent discovery in
8 this matter, and there is no good cause to amend the Scheduling Order.

## CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that:

1. Rehrig's Motion to Compel is DENIED in its entirety;
2. Gerawan's Motion to Compel is DENIED in its entirety.

**IT IS SO ORDERED.**

Dated:   **February 8, 2013**　　　　　　　　　　　　/s/ **Barbara A. McAuliffe**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**