UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., <br><br> Plaintiff, <br><br> v. <br><br> REHRIG PACIFIC COMPANY, <br><br> Defendant. | CASE NO. 1: 11-cv-01273-LJO-BAM <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER** |

## I. INTRODUCTION

Currently before the Court is the motion of Gerawan Farming, Inc. ("Gerawan") to amend the Scheduling Order ("Gerawan's Motion"). (Doc. 65.) Rehrig Pacific Company ("Rehrig") filed its opposition on February 10, 2013. (Doc. 66.) On February 11, 2013, the Court vacated the February 12, 2013 hearing on Gerawan's Motion and requested supplemental briefing. (Doc. 67.) Gerawan filed its supplemental brief on February 13, 2013. (Doc. 68.) Rehrig filed its supplemental brief on February 15, 2013. (Doc. 70.) Having considered the moving, opposition and supplemental papers, the declarations and exhibits attached thereto, as well as the Court's file, Gerawan's Motion is DENIED.

/././

1

## II. BACKGROUND

### A. Factual Background

Gerawan is in the business of producing and distributing fresh produce. In the summer of 1994, Gerawan and Rehrig, a manufacturer of plastic-molded containers for industrial use, reached an agreement to patent, manufacture, and sell the "Harvest Tote," a container for holding stone fruits such as peaches during harvesting (the "Harvest Tote Agreement"). During the Parties' collaboration on the Harvest Tote in 1993, Rehrig unilaterally filed a patent application for U.S. Patent No. 5,415,293, entitled the "Grape Lug" (the "293 Patent"). The 293 Patent, while conceptually similar to the Harvest Tote, relates to a container used for harvesting, storing, and transporting grapes. Gerawan claims Rehig's 293 Patent includes one or more claims to which Gerawan made an innovative contribution. However, Gerawan was not listed as a joint inventor and did not receive any royalties from sales of the Grape Lug.

Both parties operated under the Harvest Tote Agreement, and Rehrig paid Gerawan for sales of the Harvest Tote from 1995 through 2002, with the last royalty check being made to Gerawan in February 2003. Sometime in 2001-2002, Rehig began manufacturing and selling a "Second Generation Harvest Tote," without Gerawan, which was allegedly derived from the design of the original Harvest Tote. The parties dispute whether Gerawan was intended to be involved in the Second Generation Harvest Tote.

### B. Procedural Background

Gerawan initiated this action on July 29, 2011. (Doc. 1.) Gerawan asserted eight causes of action: (1) correction of inventorship under 35 U.S.C. § 256; (2) conversion; (3) unfair competition in violation of California Business and Professional Code Section 17200 *et seq.*; (4) unjust enrichment; (5) concealment; (6) false promise; (7) unfair competition in violation of 15 U.S.C. § 1125(a); and (8) accounting. (Doc. 1.)

On December 9, 2011, Rehrig filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11.) On March 2, 2012, the Court dismissed all of Gerawan's

1  claims,[1] except for Gerawan's first cause of action for correction of inventorship under 35 U.S.C.
2  § 256.[2]  (Doc. 25.)
3      Gerawan filed an amended complaint on March 23, 2012. (Doc. 26.) Gerawan's first
4  claim seeks correction of inventorship of the '293 Patent to include Ray Gerawan, the founder of
5  Gerawan. Rehrig disputes that Gerawan or Ray Gerawan contributed anything to the invention
6  of the '293 Patent. Gerawan's second claim is for false promise, alleging that Rehrig promised
7  Gerawan in 1993 that: (1) the parties would co-own any patents resulting from the Harvest Tote;
8  (2) Rehrig would not use any proprietary materials provided by Gerawan for any purpose other
9  than making the Harvest Tote for Gerawan, and (3) Rehrig supposedly used that proprietary
10 information to make the second generation harvest tote. Rehrig disputes any such promise was
11 made. Gerawan's third claim is for a violation of California Business and Professions Code §
12 17200 *et seq.*, which is a cause of action for unfair business practices. This claim is derivative of
13 the other two, and is based on the same facts.[3]
14     On April 16, 2012, the Parties participated in an Initial Scheduling Conference. (Doc.
15 34.) Prior to the Initial Scheduling conference, the Parties submitted an Amended Joint
16 Scheduling Report, where the Parties proposed that all discovery (expert and non-expert) would
17 be completed by January 18, 2013. (Doc. 33, 10: 24-28; 11: 1-2.) The Court accepted the
18 Parties' joint recommendations, and on May 1, 2012, entered a Scheduling Order requiring *all*
19 discovery (expert and non-expert) be completed by January 18, 2013. (Doc. 37, 2: 21-23) (*All*
20 non-expert discovery, including motions to compel, shall be completed no later than January 18,
21 2013. *All* expert discovery, including motions to compel, shall be completed no later than
22 January 18, 2013) (emphasis added). Also relevant to the instant motion, the Court set a
23 February 15, 2013 deadline to file pretrial motions. *Id.*

---

25  [1] The Court granted Gerawan leave to amend for the dismissed claims, except for Plaintiff's cause of action for unfair competition under 15 U.S.C. § 1125(a), which was dismissed without leave to amend. (Doc. 25.)

26  [2] Gerawan's correction of inventorship claim applies to the 293 Patent.

28  [3] Gerawan has subsequently filed a motion to amend its Amended Complaint (Doc. 60), seeking to ad a claim for False Marketing pursuant to 35 U.S.C. § 292.

On November 21, 2012, the Court held an Informal Telephonic Discovery Conference. (Doc. 38.)  Gerawan requested an extension of the expert disclosure deadline, as well as the expert and non-expert discovery cutoff.[4]  (Doc. 39.)  The Court held that "[Gerawan] ha[d] failed to demonstrate good cause to modify the Scheduling Order . . . .  However, in the interest of permitting meaningful case preparation," the Court continued the expert and non-expert discovery cutoff to February 8, 2013.  (Doc. 39.)  The Court further cautioned that "[n]o further modifications to the Scheduling Order w[ould] be permitted." *Id.*

On January 18, 2013, both Parties filed motions to compel further discovery, noticing the motions for hearing on the discovery cutoff date (February 8, 2013).  (Doc. 43, 44.)  On February 8, 2013, the Court denied the Parties' motions to compel further discovery for the following reasons: (1) the Parties' motions to compel discovery would require the Court to amend the Scheduling Order, and neither party had filed a motion to amend the Scheduling Order; (2) the Parties' motions were not timely because the Court could not grant any effective relief within the time-frame permitted under the terms of the Scheduling Order; and (3) even if the parties had requested modification of the Scheduling Order, there was no good cause to amend the Scheduling Order.  (Doc. 59.)

**C.      Gerawan's Motion to Amend the Scheduling Order**

On February 8, 2013, Gerawan filed a motion to amend the Scheduling Order.[5]  (Doc. 65.)  Gerawan seeks to continue the dispositive motion filing deadline and discovery cutoff dates in order to conduct further discovery.  Gerawan argues there is good cause to modify the Scheduling Order because Gerawan has been diligent in pursuing discovery and no prejudice to Rehrig would result from amendment to the Scheduling Order.  It its opposition, Rehrig argues the motion to amend the Scheduling Order is a concealed attempt to seek reconsideration of the Court's previous order denying Gerawan's motion to compel further discovery.  (Doc. 66.)

---

[4] The parties stipulated to allow the Court to rule on the matter informally and off the record.  (Doc. 39.)

[5] Gerawan filed this motion ex parte, noticing the motion for hearing on February 12, 2013.  (Doc. 65.)

4

On February 11, 2013, the Court vacated the hearing on Gerawan's Motion and requested supplemental briefing. (Doc. 67.) Specifically, the Court stated the following:

> The Court requests supplemental briefing that is <u>narrowly focused</u> on the following topics: (1) Plaintiff shall identify <u>specific</u> categories of documents that have not been produced, how those documents are relevant and necessary to prove its claims, and the prejudice that would result from non-production; and (2) Plaintiff shall identify <u>specific</u> categories of deposition testimony that Plaintiff has been unable to obtain through no fault of their own, how this testimony is relevant and necessary to prove its claims, and what prejudice would result if this additional deposition testimony were refused. The Court ADMONISHES Plaintiff that the time for broad discovery has long since past. The Court expects a distilled, narrowly focused presentation of what Plaintiff <u>absolutely</u> needs to prove its case.

(Doc. 67) (emphasis in original.)

On February 13, 2013, Gerawan filed its supplemental brief. (Doc. 68.) Gerawan's specific discovery requests, i.e., the information Gerawan absolutely needs to litigate its claims, are categorized as follows: (1) back-up documentation for sales of the Original Harvest Tote; (2) back-up documentation for sales of the Second Generation Harvest Tote; (3) documents evidencing costs associated with the Harvest Totes; (4) samples of the Original and Second Generation Harvest Totes[6]; (5) documents relating to patent pending markings by Rehrig Totes[7]; (6) profit and loss statements for the Original and Second Generation Harvest Totes; and (7) Gerawan seeks to continue the deposition of Jon Kalin regarding documents that were previously not produced and the timing, manner, placement and examples of advertising, promotion and marketing for the Second Generation Harvest Tote between 2001 and 2008.[8] (Doc. 68.) Gerawan

---

[6] Gerawan acknowledges that Rehrig made these products available for inspection at its facility in Los Angeles. This is all that is required under the Federal Rules. *See* Fed. R. Civ. P. 34. Thus, the Court will not reopen discovery on this basis.

[7] Gerawan has recently moved this Court to amend its complaint in order to add a claim for false marking pursuant to 35 U.S.C. § 292. (Doc. 60.) Gerawan's complaint, however, does not allege any claims relevant to "patent pending" markings on the Original or Second Generation Harvest Tote. Significantly, Gerawan never propounded a discovery request specifically seeking this information. Gerawan brings this issue to the Court's attention for the first time in its supplemental brief, and was never mentioned in its joint statement. Thus, the Court will not reopen discovery on this basis.

[8] Gerawan also seeks to continue the deposition of Jon Kalin on three other topics: (1) Mr. Kalin's document collection efforts both before and after January 17, 2013; (2) disclosure of prior art to William Apps; and (3) the documents in Cory Phillips' two-volume file on Gerawan that has not been produced. (Doc. 68, 7: 19-26.) However, contrary to the Court's explicit orders, Gerawan failed to "identify <u>specific</u> categories of deposition

5

also presents several arguments regarding its dissatisfaction with Rehrig's document production and the alleged lack of diligence involved in that production.[9]

Rehrig filed its supplemental opposition on February 15, 2013. (Doc. 70.) Rehrig's opposition offers two arguments that can be generally applied to all of Gerawan's discovery requests: (1) the requested information is not relevant to Gerawan's claims in the First Amended Complaint; and (2) the requested information is not absolutely necessary for Gerawan to litigate its case. (Doc. 70.)

### III.   DISCUSSION

**A.   Good Cause To Amend the Scheduling Order**

Districts Courts must enter Scheduling Orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once entered by the court, a Scheduling Order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a Scheduling Order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir.1986).

Rule 16 "recognizes the inherent power of the district court to enforce its pretrial orders through sanctions, Fed. R. Civ. P. 16(f), and the discretion of the district judge to apply an appropriate level of supervision as dictated by the issues raised by each individual case." *In re Arizona*, 528 F.3d 652, 657 (9th Cir. 2009) (citing e.g., Fed. R. Civ. P. 16(c)(2)), *cert. denied*, ––– U.S. –––, 129 S. Ct. 2852, 174 L. Ed.2d 551 (2009). A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610.

The Ninth Circuit has clarified why the Rule 16 deadlines should be taken seriously:

---

testimony" that "Plaintiff absolutely needs to prove its case." Accordingly, the Court declines to reopen discovery on this basis.

[9] These arguments do not comply with the Court's order to identify specific categories of documents and deposition testimony Gerawan needs to prove its claims. Accordingly, the Court will not address these arguments.

6

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *see also, Singh v. Arrow Truck Sales, Inc.*, 2006 WL 1867540, at *2 (E.D. Cal., July 5, 2006) ("Rules are rules – and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance"), citing *Legault v. Zambrano*, 105 F.3d 24, 28-29 (1st Cir. 1997).

The Ninth Circuit is protective of this particular rule, as it deems Rule 16 to be an essential tool in controlling heavy trial court dockets. The Ninth Circuit recognizes the importance of a "district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the [party's] prior discovery efforts were not diligent." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006). "The use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one." *Id*. As the Ninth Circuit has emphasized, "[d]istrict courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." *Id*. (citation and internal quotation marks omitted).

Once in place, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). As the Ninth Circuit explained:

>Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

"Good cause may be found to exist where the moving party shows that it diligently assisted the court with creating a workable Scheduling Order, that it is unable to comply with the Scheduling Order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the Scheduling Order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the Scheduling Order." *Kuschner v. Nationwide Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009).

Gerawan's Motion argues there is good cause to amend the Scheduling Order. Specifically, Gerawan argues it "has been diligent in discovery, after learning that Defendant had no interest in engaging in settlement discussions in earnest." (Doc. 65, 2: 10-11.) Gerawan further argues that:

>Diligence should take into account more than the mere timing of discovery. Here, Gerawan acted reasonably in not serving discovery while the parties were engaged in settlement efforts. To serve discovery while Gerawan was waiting to hear back from Rehrig as to settlement would have not have been in good faith and would have ensured that settlement discussions would be unsuccessful.

(Doc. 65, 7: 21-25.)

This argument does not present good cause to amend the Scheduling Order. The Court has been unequivocal on this point. *See,* Order Denying Parties' Motions to Compel, Doc. 59, 11: 5-8 ("Whether by virtue of circumstance or design, the Parties did not diligently undertake their discovery obligations. That this case became plagued with discovery disputes at the

eleventh hour is of no consequence. The parties have not shown that they engaged in diligent discovery in this matter, and there is no good cause to amend the Scheduling Order.")

Gerawan's failure to conduct discovery due to ongoing settlement efforts is not persuasive. First, settlement negotiations are not good cause to modify a Scheduling Order. *See, Lehman Bros. Holdings, Inc. v. Golden Empire Mortg., Inc.,* 2010 WL 2679907 (E.D. Cal. 2010) ("the parties' willingness to settle this case is admirable. However, settlement discussions generally are not an 'unanticipated' development"); *Eckert v. City of Sacramento,* 2009 WL 3211278 (E.D. Cal. 2009) (" . . . ongoing settlement negotiations do not constitute good cause justifying modification of the pretrial Scheduling Order . . ."). Settlement discussions, in and of themselves, are not good cause.

Second, as Gerawan's Motion makes clear, Gerawan was well-aware Rehrig had no intention to participate meaningfully in settlement negotiations until discovery and dispositive motions were concluded. On multiple occasions throughout this litigation, Gerawan has referred to Rehrig's portion of the parties' April 9, 2012 Joint Discovery Statement, where Rehrig represented it would not engage in settlement until after discovery: "[Rehrig] believes that settlement conference or mediation will be most effective after some discovery, and potentially dispositive motions." (Doc. 30, 12: 22-27.) It was not reasonable for Gerawan to wait six months, without either party conducting any discovery, in the hope that Rehrig "*may* have changed its mind about engaging in settlement discussions before discovery was conducted." (Doc. 65, 6: 15-20) (Emphasis added.)

Further, the dates selected in the Scheduling Order were with the full cooperation, agreement, and assurances by the parties that dates were reasonable and meaningful. The parties represented to the Court that they could complete all pretrial preparation, including settlement, within the time frame jointly selected and ordered by the Court. Given the record before this Court, the dates provided adequate time to complete discovery. Gerawan fails to convince the Court that good cause exists given the mutually agreed upon dates. There is no good cause to amend the Scheduling Order.

**B.     Gerawan Will Not Suffer Any Prejudice If Its Discovery Requests Are Denied**

Despite a lack of good cause, in the interest of meaningful case preparation, the Court afforded Gerawan the opportunity to identify specific categories of information that was *absolutely* necessary to prove its case and how that information was necessary to prove its case. (Doc. 67); *see also, Apple Inc., v. Samsung Electronics Co., Ltd.,* 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012) ("Courts are vested with inherent powers arising out of 'the control necessar[y] ... to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (Citations omitted.)  Having reviewed the parties' supplemental briefing on this issue, Gerawan has not shown how the requested discovery is necessary to prove its case.

### 1.     The Information Gerawan Seeks Is Irrelevant

The Court informed Gerawan that "[t]he time for broad discovery has long since past. The Court expects a distilled, narrowly focused presentation of what Plaintiff <u>absolutely</u> needs to prove its case." (Doc. 67) (emphasis in original.)  The discovery Gerawan seeks, however, is not relevant, let alone necessary, to prove its claims.[10]

#### i.     None of the Discovery Is Relevant To Gerawan's Correction of Inventorship Claims

Gerawan's first claim seeks correction of inventorship of the '293 Patent to include Ray Gerawan.  The issuance of a patent "creates a presumption that the named inventors are the true and only inventors." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citing *Hess v. Advanced Cardiovascular Sys.*, 106 F.3d 976, 980 (Fed. Cir. 1997)). However, if an inventor is not named in an issued patent through error and without any deceptive intention on his part, a court may order correction of the patent. See 35 U.S.C. § 256; *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997).  A court may correct either a misjoinder (the patent names a person who is not an inventor) or a nonjoinder (the patent omits

---

[10] Discussed above, Gerawan alleges three causes of action: (1) Correction of inventorship regarding the '293 Patent; (2) False promise; and (3) Violation of California Business and Professions Code § 17200 *et seq.* (Doc. 26.) Gerawan's claim under the California Business and Professions Code is completely derivative of its other two claims and, as such, the Court does not separately address the relevance of Gerawan's discovery requests for its third claim for relief.

the name of a person who is an inventor). *See Stark v. Advanced Magnetics*, 119 F.3d 1551, 1553 (Fed. Cir. 1997). "Conception is the touchstone" in determining inventorship. *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994). Conception is the "formation in the mind of the inventor[] of a definite and permanent idea of the complete and operative invention[.]" *Id.* (citation and internal quotation marks omitted). To be a joint inventor, an individual must "contribute in some significant manner to the conception of the invention*." Fina Oil & Chem.*, 123 F.3d at 1473.

The discovery Gerawan seeks is, generally, financial information about the Harvest Tote, not the '293 Patent. While Gerawan's claim for correction of inventorship touches on information regarding the parties' collaboration on the Original Harvest Tote, information relating to sales, costs, profit and loss statements or advertising for the Original or Second Generation Harvest Tote are irrelevant to this claim. While Gerawan now argues Rehrig may not have paid Gerawan all monies due under the Original Harvest Tote Agreement, there is no cause of action currently before the Court making such allegations. Gerawan's claim under 35 U.S.C. § 256 seeks to add Ray Gerawan as an inventor to the '296 Patent, and concerns the Grape Lug Tote only. Gerawan's discovery requests concerning the Original and Second Generation Harvest Totes are irrelevant to this claim.

      **ii.**      **Gerawan's Discovery Requests Concerning the Original Harvest Tote Are Irrelevant to Its Common Law Claim For False Promise**

Gerawan's second claim is for false promise, alleging that Rehrig promised Gerawan in 1993 that: (1) the parties would co-own any patents resulting from the Harvest Tote, (2) Rehrig would not use any proprietary materials provided by Gerawan for any purpose other than making the Harvest Tote for Gerawan, (3) Rehrig used that proprietary information in applying for the '293 Patent, and (4) Rehrig used that proprietary information to make the Second Generation Harvest Tote.

A false promise is defined as "[a] promise, made without any intention of performing it." Cal. Civ. Code § 1710. In California, a cause of action may exist where a defendant uses a false

1  promise to fraudulently induce the plaintiff into entering a contract. *Lazar v. Superior Court*, 12
2  Cal. 4th 631, 638 (1996). To establish such a claim, the plaintiff must show: (1) the defendant
3  made a promise; (2) the defendant knew the promise was false at the time it was made; (3) the
4  defendant intended to induce the plaintiff's reliance; (4) the plaintiff actually and justifiably
5  relied on the promise; and (5) the plaintiff suffered damages as a result of his reliance on the
6  promise. *See Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 973-74 (1997).

7  Information concerning the Original Harvest Tote is relevant to this claim insofar as it
8  concerns the parties' collaboration, and any promises related thereto.  Information concerning
9  sales, costs, profit and loss statements or advertising for the Original Harvest Tote, however, are
10 irrelevant to this claim.  Gerawan's false promise claims implicate potential damages from sales
11 of the Grape Lug and the Second Generation Harvest Tote, not the Original Harvest Tote.  While
12 Gerawan now appears to claim Rehrig may not have paid all monies due with respect to the
13 Original Harvest Tote, that claim is not before the Court.  The discovery Gerawan seeks with
14 respect to the Original Harvest Tote is irrelevant to the claims presented in its First Amended
15 complaint.

16 **2.  Gerawan's Remaining Discovery Requests Have Been Sufficiently Fulfilled**
17 **Or Are Otherwise Unnecessary to Prove Its Claims**

18 The only requested discovery relevant to Gerawan's claims are (1) back-up
19 documentation for sales of the Second Generation Harvest Tote, (2) profit, loss and costs
20 statements for the Second Generation Harvest Tote, and (3) deposition testimony concerning
21 advertising and promotion for the Second Generation Harvest Tote.  As explained below,
22 Gerawan's arguments relating to these discovery requests do not persuade the Court to reopen
23 discovery.

24 **i.  Back-up Documentation For Sales of the Second Generation Harvest**
25 **Tote**

26 Gerawan's Request for Production No. 27 requests "Documents sufficient to identify all
27 sales of the Second Generation Harvest Tote for each year such tote was offered for sale and/or
28

sold." (Doc. 51, 45: 5-7.) Rehrig responded by providing an 81-page report listing sales of the Grape Lug, Original and Second Generation Harvest Totes during the relevant time period. Gerawan claims it is entitled to, and requires supporting documentation for this report, including invoices, purchase orders and bills of sale.

Gerawan's request for production does not call for the type of information Gerawan now requests. The discovery request at issue requests Rehrig provide "[d]ocuments sufficient to *identify* all sales of the Second Generation Harvest Tote." (Emphasis added.) The document request does not request supporting details of sales for the Second Generation Harvest Tote. The 81-page summary report provides sufficient information to *identify* each sale of the Second Generation Harvest Tote, which is all that was requested.

> ii. **Profit, Loss and Costs Statements for the Second Generation Harvest Tote**

Gerawan has requested profit and loss statements and documents reflecting costs of the Second Generation Harvest Tote. Rehrig has responded that it does not create profit, loss and costs statements by product, and that the only responsive documents (which were produced) are forward-looking revenue and cost projection spreadsheets. Gerawan insists that, based on responses it obtain in deposition testimony, such documents exist. Gerawan argues this information is necessary so its experts can formulate an accurate damages calculation and to evaluate Rehrig's claim that the Original Harvest Tote was phased out of production because it was too expensive.

The Court is not persuaded to reopen discovery on this basis. Rehrig has informed Gerawan that the documents they seek do not exist. If Rehrig seeks to introduce previously unproduced documents responsive to these discovery requests at trial or on summary judgment, Gerawan may move to exclude those documents. *See,* Fed. R. Civ. P. 37(d) (Rule 37(d) provides that a district court may sanction a party for failing to obey a Rule 34 request for production of documents by imposing any sanction authorized by Rule 37(b)(2)(A)-(C)). Rule 37(b)(2)(B) permits the Court to enter an order "prohibiting that party from introducing designated matters in

evidence." Fed. R. Civ. P. 37(b)(2)(B)).

### iii. Deposition Testimony Concerning Advertising And Promotion for the Second Generation Harvest Tote

Gerawan seeks a second deposition of Jon Kalin for two reasons: (1) Rehrig produced 40 pages of documents subsequent to Kalin's deposition, which Gerawan believes they should have had at their disposal for questioning during Mr. Kalin's deposition; and (2) Mr. Kalin was not prepared to testify regarding certain marketing and advertising aspects of the Second Generation Harvest Tote.

Gerawan's desire to retake the deposition of Mr. Kalin does not persuade the Court to reopen discovery. First, Gerawan offers no argument concerning the substance of the relevant documents or why Mr. Kalin would need to be questioned about them. Second, Gerawan has not identified how deposition testimony concerning the specific types of advertising inquired into is necessary to prove its case. The evidence indicates Mr. Kalin was prepared to discuss a variety of topics relating to Rehrig's advertising and marketing of the Second Generation Harvest Tote. The evidence further shows Mr. Kalin was unable to answer three discrete questions as to whether the Second Generation Harvest Tote was advertised in two types of publication, and when Rehrig's website went live. Gerawan does not explain why substantive answers to these questions must be answered in order to prove its case. Accordingly, this is not a basis to reopen discovery.

## CONCLUSION

Based on the foregoing, Gerawan's Motion to Amend the Scheduling Order is DENIED IN ITS ENTIRETY.

**IT IS SO ORDERED.**

Dated: February 21, 2013         /s/ Barbara A. McAuliffe
                                 **UNITED STATES MAGISTRATE JUDGE**