UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., | Case No. 1:11-cv-1273 LJO BAM |
| Plaintiff, | ORDER RE: PARTIES' SUPPLEMENTAL BRIEFING |
| v. | |
| REHRIG PACIFIC COMPANY, | |
| Defendant. | |

On April 16, 2013, the parties submitted a joint pretrial statement. The joint pretrial statement revealed that the parties sharply disagree on the scope and viability of the two claims remaining in this case: (1) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (2) unfair competition under California common law. After reviewing the parties' authorities and positions in the joint pretrial statement, the Court requested further briefing on why these claims should not be disposed of. The Court stated that it had no intention of proceeding to trial if the claims lacked merit.

The parties filed their briefing as follows: on April 24, 2013, Plaintiff Gerawan Farming, Inc. ("Plaintiff" or "Gerawan") filed its initial brief; on April 26, 2013, Defendant Rehrig Pacific Company ("Defendant" or "Rehrig") filed its response; and on May 3, 2013, Plaintiff filed a final response. The Court has reviewed the parties' submissions and rules as follows.

# I. DISCUSSION

## A. Unfair Competition – Common Law

Plaintiff avers that Defendant engaged in unfair competition in violation of California common law by developing and selling the Second Generation Harvest Tote based on Plaintiff's Harvest Tote design without Plaintiff's authorization and without paying Plaintiff royalties. (Doc. 23 ¶¶ 36-37.) In its briefing, Plaintiff explains that this claim is grounded on a traditional theory of "passing off" goods. (Doc. 23 ¶¶ 36-37.)

Unfair competition under California common law supports a claim premised on allegations of passing off. See Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1263 (1994) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off'[.]"); see also Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008). Passing off is the practice of selling one person's product or services under the name or mark of another. Lamonthe v. Atlantic Recording Corp., 847 F.2d 1403, 1406 (9th Cir. 1988). The harm embodied in passing off is the use of consumer deception to obtain the customers of others; the consumer is led to believe that he is purchasing goods or services originating or affiliated with one person or company when in fact they are not. Thus, a necessary ingredient to a claim of passing off is the likelihood of consumer confusion as to the source or affiliation of a product or service. See Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 793 (9th Cir. 1981) ("California courts have construed the tort of passing off to require likelihood of consumer confusion as to source or sponsorship").

Plaintiff does appear to have evidence that could lead a trier of fact to conclude that there was a likelihood of consumer confusion as to Plaintiff's affiliation with the Second Generation Harvest Tote. Plaintiff has produced a memorandum written from one of its employees to another in which there is some indication that customers were aware of Plaintiff's affiliation and involvement with the Harvest Tote. (Doc. 162, Ex. V.) There is also evidence in the record showing that Defendant referred to and sold the Second Generation Harvest Tote under the name "Harvest Tote," a name created by Plaintiff. Taking this together, a jury might conclude that consumers were tricked into believing that the Second Generation Harvest Tote, like the original Harvest Tote, was affiliated with or sponsored by Plaintiff in some way. In the end, the record is simply too cloudy for the Court to enter summary judgment *sua*

*sponte* in Defendant's favor at this time.  See Thane International, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 901-02 (9th Cir. 2002) ("[D]istrict courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent facts that go into determining likelihood of confusion usually requires a full record.").

Defendant argues, and on first impression it appeared to the Court, that any claim premised on allegations of "passing off" was dismissed with prejudice in connection with Plaintiff's claim under the Lanham Act.  This is not true.  Plaintiff's Lanham Act claim was based on allegations of "reverse passing off" and the *origin* of the Harvest Tote and Second Generation Harvest Tote.  Reverse passing off occurs when the defendant takes another party's product, removes the party's mark, and sells the product under the defendant's own name or mark.  See Lamonthe, 847 F.2d at 1406.  Although reverse passing off and passing off share the same underlying concern – the deception of consumers as to the source or sponsorship of a product – the method in which consumer confusion is accomplished under reverse passing off is distinct from that of passing off.  Therefore, the Court's dismissal of Plaintiff's allegations of reverse passing off and deception as to the origin of the Harvest Tote products did not necessary preclude all allegations of passing off in this case.

However, with that said, the Court acknowledges that Defendant may have been led to believe that passing off was not a viable legal theory in this case.  In dismissing Plaintiff's Lanham Act claim with prejudice, the Court stated that amendment of the claim would be futile.  This language could be taken to suggest that even if Plaintiff asserted a passing off-type theory of liability, it would fail.  If this is Defendant's position, and Defendant represents that it is now unprepared to defend against this claim, the Court will entertain a motion (or stipulation)[1] to reopen discovery and reschedule trial.  If Defendant elects to file such a motion (or preferably if the parties are able to stipulate), it shall do so by Wednesday, May 15, 2013.

**B.     Unfair Competition – UCL**

Plaintiff also alleges that Defendant engaged in "unfair" business practices in violation of the UCL by developing and selling the Second Generation Harvest Tote without Plaintiff's authorization

---

[1] It appears that Plaintiff would not object to this.  (See Doc. 154 at 1 n.1.)

3

or paying Plaintiff royalties.  (Doc. 23 ¶¶ 36-37.)

What constitutes an "unfair" business practice under the UCL depends on whether the plaintiff is bringing suit against the defendant as one of its competitors or as one of its consumers.  See Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 253 (Ct. App. 2010); Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 813 n.7 (N.D. Cal. 2011).  When a party sues a *competitor* for an unfair business practice, the term "unfair" means "conduct that threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).  In contrast, when a party files suit as a *consumer*, a broader definition of "unfair" may apply.  Although California courts are divided on the issue, one definition of "unfair" conduct is any practice that "offends an established public policy or [one that] is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1169-70 (9th Cir. 2012) (South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886-87 (Ct. App. 1999)).  See also Drum, 182 Cal. App. 4th at 256-57 (explaining the various definitions).

Here, the parties disagree as to whether Plaintiff asserts its UCL claim against Defendant as a competitor and whether Cel-Tech's narrow definition of "unfair" applies to this case.  Plaintiff argues that its claim stems from its allegation that Defendant breached a confidentiality agreement the parties reached whereby Defendant agreed that any improvements or modifications to the Harvest Tote would be assigned to Plaintiff.  Thus, by developing and selling the Second Generation Harvest Tote without Plaintiff's authorization, Plaintiff contends that (1) Defendant injured it as a *business partner*, not as a competitor; and (2) therefore Cel-Tech does not apply.  Defendant, on the other hand, emphasizes that the underlying injury Plaintiff complains of is Defendant selling the Second Generation Harvest Tote in lieu of, and thus in competition with, the Harvest Tote.  Therefore, in Defendant's view, Plaintiff's UCL claim is a competitor-type action subject to Cel-Tech.

The Court views this matter as consisting of two parts.  First, Plaintiff alleges that Defendant breached the parties' confidentiality agreement by developing and then selling the Second Generation Harvest Tote without Plaintiff's authorization and without paying Plaintiff royalties.  Plaintiff alleges

that this was unfair because the parties' confidentiality agreement effectively gave Plaintiff a complete ownership interest in the Second Generation Harvest Tote, which was a tangible product with evident financial potential.

In the Court's view, this transaction most closely approximates a consumer-type relationship. The parties' confidentiality agreement emerged after Plaintiff expressed interest in having Defendant produce the Harvest Tote not only for the public, *but also for Plaintiff itself*. Therefore, the test that seems most applicable in this context is whether Defendant's breach of the confidentiality agreement, and the circumstances surrounding the breach, is one that "offends an established public policy" or is one that "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." S. Bay Chevrolet, 72 Cal. App. 4th at 886-87.  This entails the Court weighing the utility of Defendant's conduct against the gravity of the harm alleged by Plaintiff.  See id. at 886.  Ultimately this is a factual matter that the Court cannot resolve at this juncture.[2]

Second, Plaintiff alleges that not only did Defendant sell the Second Generation Harvest Tote without Plaintiff's authorization, *but it also sold it in competition with the Harvest Tote*, a product that Plaintiff had a financial interest in.  (See Doc. 106 at 2) (indicating that it is Plaintiff's position that its unfair competition claims are based, in part, on the allegation that "Rehrig improperly competed with Gerawan by offering the Second Generation Harvest Tote at a discounted price to customers to switch from using the Harvest Tote for which Rehrig paid Gerawan a royalty").  To the extent that Plaintiff challenges this conduct as a violation of the "unfair" prong of the UCL, it is subject to the test set forth in Cel-Tech.  This conduct amounts to a dispute between competitors.  See, e.g., Watson Labs, Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1117-19 (C.D. Cal. 2001) (business partner turned competitor analyzed under Cel-Tech); see also Weco Supply Co. v. Sherwin-Williams Co., No. 1:10-

---

[2] Defendant argues that a breach of a contract cannot form the basis of Plaintiff's UCL claim. That is not true. "[A] breach of contract may . . . form the predicate for [a UCL claim], *provided that it also constitutes conduct that is unlawful, or unfair, or fraudulent*." Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal. App. 4th 638, 645 (Ct. App. 2008) (emphasis in original) (internal quotation marks and citations omitted). See also Cabo Brands, Inc. v. MAS Bevs., Inc., Case No. 8:11-cv-1911-ODW(ANx), 2012 U.S. Dist. LEXIS 78017, at *11-13 (C.D. Cal. June 5, 2012) (the allegation that the defendant enjoyed the benefits of a contract "without carrying out its part of the contract" supported a claim for unfair competition under the "unfair" prong).  Again, whether the breach of contract at issue here is unfair depends on factual matters that the Court cannot resolve at this juncture.

CV-0171 AWI BAM, 2012 U.S. Dist. LEXIS 73255, at *15-18 (E.D. Cal. May 25, 2012) (business partner turned competitor analyzed under Cel-Tech).

As indicated above, under Cel-Tech the term "unfair" means "conduct that threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." 20 Cal. 4th at 187. Here, there is nothing to support a showing of an incipient violation of an antitrust law or a significant threat to competition. Although Plaintiff notes in its brief that Defendant's false marking of the Second Generation Harvest Tote as "Patent Pending" establishes a significant threat to competition, those allegations were never pled in the complaint and were never a part of this case. Therefore, to the extent that Plaintiff protests the fact that Defendant sold the Second Generation Harvest Tote in competition with the Harvest Tote, and the way in which Defendant went about doing it (e.g., selling the Second Generation Harvest Tote at a discount), Plaintiff fails to support such a claim and it must be dismissed. See Watson Labs, 178 F. Supp. 2d at 1119 (to establish a claim under Cel-Tech, a plaintiff must show a significant threat of harm to *competition*, not merely harm to the plaintiff's own commercial interests).[3]

## II. CONCLUSION

For the reasons set forth above, the Court:

1. DECLINES to grant summary judgment in favor of Defendant on Plaintiff's common law unfair competition claim at this time;

2. DISMISSES Plaintiff's UCL claim to the extent that it is premised on allegations that Defendant sold the Second Generation Harvest Tote in competition with the Harvest Tote and sought to undermine Plaintiff's financial interests in the Harvest Tote; and

3. ORDERS Defendant to file any motion or stipulation to reopen discovery and reset the trial date by Wednesday, May 15, 2013. Any motion or stipulation must provide the Court with a new time estimate. The parties are also encouraged to consider consenting

---

[3] Plaintiff suggests that its UCL claim may also be supported by "unlawful" or "fraudulent" conduct. (Doc. 109 at 8-9.) The Court is not persuaded. Plaintiff specifically alleged its cause of action under the "unfair" prong of the UCL. (Doc. 23 ¶ 37.)

to Magistrate Judge jurisdiction in order to ensure a firm trial date and to preclude the need to trail day to day on this Court's trial calendar.

IT IS SO ORDERED.

Dated:   **May 9, 2013**                                    **/s/ Lawrence J. O'Neill**
                                                                                    UNITED STATES DISTRICT JUDGE