UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., | Case No. 1:11-cv-1273 LJO BAM |
| Plaintiff, | ORDER ON THE PARTIES' MOTIONS IN LIMINE |
| v. | |
| REHRIG PACIFIC COMPANY, | (Docs. 110-112, 114-128) |
| Defendant. | |

In accordance with the Court's preliminary pretrial order, Plaintiff Gerawan Farming, Inc. ("Plaintiff") and Defendant Rehrig Pacific Company ("Defendant") filed motions in limine on April 25, 2013. The parties filed oppositions to the motions in limine on April 30, 2013. Having read and considered the parties' submissions, the Court rules on the motions in limine as follows.

A.   **Plaintiff's Motions in Limine**

   **1.   Motion in Limine No. 1 – Exclusion of Jim Nau**

Plaintiff moves to exclude Jim Nau from testifying at trial pursuant to Federal Rule of Civil Procedure 37(c)(1). Plaintiff argues that Defendant never disclosed Mr. Nau as a fact witness, which Defendant is required to do under Federal Rule of Civil Procedure 26(a) and (e) if Defendant intends to have Mr. Nau testify at trial.

This motion in limine is GRANTED. It is undisputed that Defendant did not disclose Mr. Nau as a fact witness under Rule 26(a) or (e). Therefore, Defendant may not call Mr. Nau as a fact witness

1

1  at trial. See Fed. R. Civ. P. 37(c)(1) ("If a party fails to . . . identify a witness as required by Rule
2  26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the
3  failure was substantially justified or is harmless). Nothing in this order, however, precludes Defendant
4  from calling Mr. Nau on rebuttal solely for impeachment purposes. See Fed. R. Civ. P. 26(a)(1)(A)(i)
5  (no disclosure requirement if the person is used solely for impeachment).

6  **2.    Motion in Limine No. 2 – Limiting Expert Opinions to Expert Reports**

7  Plaintiff moves to preclude Defendant from offering any expert opinions that have not already
8  been disclosed. Specifically, Plaintiff argues that the trial testimony of Defendant's expert witnesses,
9  Suzanne Heinemann and William Apps, should be limited to what the experts provided in their initial
10 disclosures and expert reports. Plaintiff insists that any other opinions should be excluded pursuant to
11 Federal Rule of Civil Procedure 37(c)(1).

12 This motion in limine is GRANTED IN PART and DENIED IN PART. First, with respect to
13 Mr. Apps, his expert opinions, to the extent that he provides any, shall be confined to whatever he has
14 disclosed under Federal Rule of Civil Procedure 26(a)(2)(C). Second, with respect to Ms. Heinemann,
15 her expert opinions shall be limited to her expert report *and* her deposition testimony regarding Larry
16 Gorman's supplemental expert reports. Although Plaintiff suggests that Ms. Heinemann's deposition
17 testimony should be excluded because she failed to provide a written supplemental report on the issue,
18 whatever prejudice was caused by the lack of a written report was insignificant in light of the fact that
19 Plaintiff fully deposed Ms. Heinemann on the issue. Moreover, as later explained in connection with
20 Defendant's motion in limine number 1, Ms. Heinemann must be permitted to testify on matters that
21 were discussed in her deposition to remedy the prejudice caused by Plaintiff's untimely submission of
22 Larry Gorman's supplemental expert report.

23 **3.    Motion in Limine No. 3 – Limitation on Experts**

24 Plaintiff moves to preclude Defendant from offering expert opinions from anyone other than
25 Suzanne Heinemann and William Apps. Plaintiff argues that Ms. Heinemann and Mr. Apps were the
26 only experts Defendant disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(A). Plaintiff
27 therefore insists that Federal Rule of Civil Procedure 37(c)(1) precludes Defendant from introducing
28 expert opinions from anyone else.

2

This motion in limine is GRANTED. *Both parties* are precluded from offering expert opinions from any witness who has not been properly disclosed as an expert pursuant to Rule 26(a)(2)(A). See Fed. R. Civ. P. 37(c)(1).

### 4. Motion in Limine No. 4 – Profits, Losses, Costs, and Deductions

Plaintiff moves to preclude Defendant from introducing any evidence of costs associated with manufacturing the Second Generation Harvest Tote. Plaintiff argues that it requested such information during discovery but Defendant failed to respond.

This motion in limine is GRANTED IN PART and DENIED IN PART. Although Defendant's responses are deficient, it appears that Defendant did produce some documents relating to costs of the Second Generation Harvest Tote. Moreover, the existence of certain costs such as resin appear to be undisputed. Therefore, while Defendant may not offer any evidence not produced during discovery, Defendant will not be precluded from offering evidence on this matter altogether.

### 5. Motion in Limine No. 5 – Advertising and Marketing

Plaintiff moves to preclude Defendant from offering any evidence of advertising and marketing by Defendant regarding the Harvest Tote and the Second Generation Harvest Tote. Plaintiff maintains that Bill Bloch was the person most knowledgeable about the subject, yet Defendant refused to make Mr. Bloch available for deposition. Plaintiff stresses that Defendant instead had Cory Phillips and Jon Kalin deposed on the issue, despite the fact that neither witness was adequately prepared to testify on advertising or marketing.

This motion in limine is GRANTED IN PART and DENIED IN PART. Precluding Defendant from offering *any* evidence of advertising and marketing is not warranted, as there is no basis for such a sweeping prelusion. However, while Mr. Kalin and Mr. Phillips will be allowed to testify at trial on the issue of Defendant's advertising and marketing efforts, neither witness will be allowed to expand or change their deposition testimony. As for Mr. Bloch, he is precluded altogether from testifying at trial. In refusing to make Mr. Bloch available for deposition, Defendant represented to Plaintiff that Mr. Bloch was ill and that Defendant would not call Mr. Bloch to testify at trial. The Court will hold Defendant to that representation.

///

**6.     Motion in Limine No. 6 – Authority to Develop and Sell the Second Generation Harvest Tote**

Plaintiff moves to preclude Defendant from offering evidence as to why it believed it had the authority to develop and sell the Second Generation Harvest Tote.  Plaintiff maintains that it requested this information by way of interrogatory, but Defendant failed to respond.

This motion in limine is GRANTED IN PART and DENIED IN PART.  It appears that while Defendant did not respond to Plaintiff's Interrogatory Number 22, Defendant did suggest the basis for its belief that it had the authority to develop and sell the Second Generation Harvest Tote in its other discovery responses.  Therefore, Defendant will not be completely precluded from offering evidence on the issue.  However, Defendant will be confined to the reasons that were set forth in its discovery responses, including (1) Defendant's response to Plaintiff's Interrogatory Number 14; (2) Defendant's responses to Plaintiff's Document Request Numbers 8, 46, 55, 58, 65, 67, 68, 74, 75, 77, 79, 80, and 81; and (3) Jon Kalin's deposition testimony on the issue.

**7.     Motion in Limine No. 7 – Failure to License, Manufacture, or Police**

Plaintiff moves to preclude Defendant from offering evidence that Plaintiff failed to license, manufacture, or "police" the Harvest Tote.  Plaintiff argues that such evidence is irrelevant, would be overly confusing to the jury, and therefore should be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.

This motion in limine is DENIED.  First, the term "policing" is too subjective and vague to warrant a blanket preclusion of evidence.  Second, Plaintiff's licensing, manufacturing, and "policing" activities (or lack thereof) may be relevant to Defendant's statute of limitations defense.  Specifically, Plaintiff's activities may shed light on whether Plaintiff was aware of, or should have been aware of, the Second Generation Harvest Tote at some point prior to 2008.  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) ("[I]n order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation[.]").  Therefore, Defendant will not be precluded from offering evidence on these issues at trial.

///

**8.     Motion in Limine No. 8 – Physical Samples**

Plaintiff moves to preclude Defendant from introducing into evidence (or referring to) physical samples of the Harvest Tote and Second Generation Harvest Tote other than the two samples used at Jeff Ackerman's deposition. Plaintiff argues that Defendant failed to produce samples of the Harvest Tote and Second Generation Harvest Tote when Plaintiff requested them pursuant to Federal Rule of Civil Procedure 34.

This motion in limine is DENIED. Rule 34 requires a party to produce *for inspection* tangible evidence; it does not require the party to ship the evidence to the requesting party. See Fed. R. Civ. P. 34(a)(1); see also Mezu v. Morgan State Univ., 269 F.R.D. 565, 575 (D. Md. 2010) ("Defendant was not obligated to photocopy the documents *and mail them to Plaintiff*; Defendant only was obligated to make the documents available to Plaintiff for inspection and copying.") (emphasis added). Moreover, the time, place and manner set by Defendant for inspection of the Harvest Tote and Second Generation Harvest Tote samples were reasonable. Thus, there is no reason to preclude Defendant from using (or referring to) its own samples of the Harvest Tote or the Second Generation Harvest Tote. However, in order to eliminate any hint of prejudice, Defendant will be required at trial to allow Plaintiff to inspect any sample Defendant wishes to use before it is shared with a witness or the jury.

**B.     Defendant's Motions in Limine**

**1.     Motion in Limine No. 1 – Exclusion of Larry Gorman's Expert Reports**

Defendant moves to exclude the initial and supplemental expert reports that were tendered by Plaintiff's damages expert, Larry Gorman. Defendant argues that both of these reports are speculative and based on unreliable data. Defendant also argues that Mr. Gorman's supplemental report is not a supplemental report at all; rather, it is an attempt to sneak in completely new expert opinions in the guise of supplementation. Finally, Defendant maintains that Mr. Gorman's opinions on damages are irrelevant to Plaintiff's claim for unfair competition under California Business and Professions Code section 17200, *et seq.* ("the UCL").

**a.     Initial Report**

First, to the extent that Defendant moves to exclude Mr. Gorman's initial report, its motion in limine is GRANTED. Under Federal Rule of Evidence 702, the court serves a special "gatekeeping"

function with respect to expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). See Fed. R. Evid. 702(b)-(d). Here, it is evident that Mr. Gorman's damages calculations as set forth in this initial report are unreliable. Mr. Gorman attempts to extrapolate close to eight years of profits generated by the *Second Generation Harvest Tote* (2004 to December 2012) using one and a half years of profits for the *Harvest Tote* (1995 to July 1996). Setting aside the good question of whether one and a half years of profits provides sufficient data points to calculate profits for the next 16 years,[1] Mr. Gorman offers no explanation for his assumption that profits for the Second Generation Harvest Tote *and* the Harvest Tote, *which are two distinct products*, would be the same. This is a critical flaw in Mr. Gorman's report. And if that were not enough, Mr. Gorman himself points to others. (See, e.g., Doc. 129, Ex. B at 7) ("[T]he discount rate of 8% can be criticized, not necessarily because it is too high, or too low, but rather because the empirical work required to estimate a valid discount rate that is fully consistent with finance theory . . . has not been conducted."). Plaintiff does not argue otherwise. Therefore, the Court finds exclusion of this report to be warranted under Rule 702.

### b.   Supplemental Report

Second, to the extent that Defendant moves to exclude Mr. Gorman's supplemental report *due to its unreliability*, it is DENIED. Defendant protests that Mr. Gorman's damages calculations in this report are unreliable because (1) Mr. Gorman's calculation of costs for the Harvest Tote differs greatly from the cost benchmark the parties agreed to in 2002; and (2) Mr. Gorman damages calculations fail to account for the fact that Plaintiff's involvement with the Second Generation Harvest Tote "would have doomed" the product. (Doc. 119 at 16.) These criticisms go toward the weight of the evidence, not its admissibility.

However, the Court does find merit in Defendant's argument that Mr. Gorman's supplemental report was not timely disclosed. Plaintiff provided Defendant Mr. Gorman's supplemental report on

---

[1] Some of these data points may even be flawed. Defendant points to multiple errors that Mr. Gorman made in calculating the profits tied to the Harvest Tote from 1995 to July 1996. (See Doc. 119 at 7-8.)

6

February 4, 2013, which was well after the deadline for the parties to submit expert reports. Plaintiff nevertheless maintains that this report was timely because it was merely supplementing Mr. Gorman's initial expert report, as Plaintiff is allowed and in fact required to do pursuant to Federal Rule of Civil Procedure 26(e)(2). This is not true.

Supplementing an expert report pursuant to Rule 26(e) means "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998). Accord Fed. R. Civ. P. 26(e)(1)(A). Here, Mr. Gorman's supplemental report goes far and beyond simply correcting inaccuracies or filling minor gaps in his initial report. Mr. Gorman generates an entirely new damages calculation that incorporates *thousands* of pages of additional information. For example, whereas Mr. Gorman's original report has a minimal discussion, if any, on costs related to the Second Generation Harvest Tote, Mr. Gorman's supplemental report goes into significant detail into calculating the cost of labor and raw materials. (See Doc. 129, Ex. C.) The result: a significantly different calculation of damages. In his original report, Mr. Gorman opines that profits for the Harvest Tote and the Second Generation Harvest Tote *combined* were $2.4 million. (Doc. 129, Ex. B at 7.) Yet in his supplemental report, Mr. Gorman opines that profits from the Second Generation Harvest Tote *by itself* were $2.32 million assuming 0% interest and $4.03 million assuming 10% interest. (See Doc. 129, Ex. C at 16.) These are entirely different opinions. See Linder v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 640 (D. Haw. 2008) ("Rule 26(e) . . . does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label.") (quotation marks and citations omitted).[2]

The question, then, is whether Mr. Gorman's untimely report should be stricken. Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

---

[2] Plaintiff maintains that Defendant "does not . . . identify any differences in methodology or approach between the reports . . . ." (Doc. 133 at 6.) This argument is misguided. Just because the general approach or basic methodology between the reports is the same does not mean that Plaintiff may smuggle in completely new opinions under the guise of supplementation. Allowing such would eviscerate the purpose of the Court's expert deadlines.

7

      motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Ninth Circuit has explained that Rule 37(c)(1) "gives teeth" to the disclosure requirements set by Rule 26. <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001). The sanction is "self-executing" and "automatic," and is ameliorated only when the party facing preclusion is able to show that its failure to properly disclose was substantially justified or is harmless. <u>Id.</u>; see <u>Torres v. City of Los Angeles</u>, 548 F.3d 1197, 1213 (9th Cir. 2008).

      The Court does not find that Plaintiff's belated disclosure was substantially justified. Plaintiff blames Defendant for failing to produce requested documents sooner that it did. Plaintiff emphatically protests that it asked for the documents "at least five [times]." (Doc. 133 at 8.) The problem with this argument is twofold. First, Plaintiff fails to provide specific details regarding these requests, such as when exactly they were made. Second, and most critically, there is no indication that Defendant had any obligation under the Federal Rules to produce anything. Plaintiff does not argue that Defendant failed to meet its obligations under Federal Rule of Civil Procedure 26(a)(1)(A)(ii), which requires a copy or a description of all documents that a party may use to support its claims or defenses. Nor can Plaintiff argue that Defendant failed to meet its obligations under Federal Rule of Civil Procedure 34; the record shows that Plaintiff did not propound "formal" discovery requests until November 9, 2012. (See Doc. 59 at 4.) Thus, Plaintiff's protests simply amount to a complaint that Defendant ignored its informal discovery requests. That is not substantial justification. Plaintiff's counsel are sophisticated and experienced trial attorneys. Counsel are well aware that Plaintiff cannot rely solely on informal discovery requests to obtain documents, especially when the documents contain Defendant's sensitive and confidential financial information.

      Turning to harmlessness, the Court finds that Plaintiff's late disclosure of Mr. Gorman's expert report was harmful. As indicated above, Plaintiff provided Defendant Mr. Gorman's new opinions on February 4, 2013. This was just four days before the close of discovery and less than 48 hours before Defendant was set to depose Mr. Gorman. Moreover, Defendant's rebuttal expert, Ms. Heinemann, had no more than three days to review Mr. Gorman's new report before being deposed on February 8, 2013. It is therefore evident that Defendant was prejudiced by (1) having wasted resources reviewing

and preparing for Mr. Gorman's old opinions; (2) having little time to prepare for Mr. Gorman's new opinions; and (3) the fact that its rebuttal expert had little time to review and respond to Mr. Gorman's newly disclosed opinions.

Nevertheless, in the specific circumstances of this case, the Court declines to strike Plaintiff's late report. Doing so would almost fatally cripple Plaintiff's common law claim, despite the fact that the prejudice suffered by Defendant is easily remedied. See Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997) (court's discretion in sanctioning discovery conduct should be guided by the risk of prejudice, the public policy favoring disposition of cases on their merits, and the availability of less drastic sanctions). Thus, instead of striking Mr. Gorman's late report, the Court sanctions Plaintiff as follows. First, Ms. Heinemann will not be precluded at trial from offering opinions on Mr. Gorman's supplemental report. She may testify on any subject reached in her deposition. Second, if Defendant needs to depose Mr. Gorman further, Plaintiff shall produce Mr. Gorman for a two-hour deposition at Plaintiff's expense. Defendant shall notify Plaintiff of its need for the deposition by Thursday, May 16, 2013, and Plaintiff shall produce Mr. Gorman by no later than Thursday, May 23, 2013.[3]

### c. Application to Section 17200

To the extent that Defendant argues that Mr. Gorman's report is irrelevant to Plaintiff's claim under the UCL, the Court tentatively agrees. While the scope of the UCL is "broad" and "sweeping," its remedies are "generally limited to injunctive relief and restitution." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 179-80 (1999). The California Supreme Court has held that restitution in the context of the UCL means (1) money or property that was once in the plaintiff's actual possession, or (2) money or property that the plaintiff has a "vested interest in." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003).

Here, Plaintiff does not appear to have any vested interest in Defendant's profits from sales of the Second Generation Harvest Tote. Plaintiff may have an interest in the Second Generation Harvest

---

[3] Plaintiff and its counsel are forewarned that any further dilatory conduct on their part will be grounds for severe sanctions, including dismissal. Moreover, Plaintiff and its counsel are placed on notice that in the future this Court will not tolerate parties filing shell expert reports to meet the expert disclosure deadline so that the party can then turn around and file new expert opinions in the guise of supplementation. Such a practice eviscerates the purpose of the Court's deadlines.

1  Tote itself, but this does not automatically mean that Plaintiff has a firm, vested interest in the profits
2  or business opportunities associated with the Second Generation Harvest Tote.  Those are expectancy-
3  type damages, which are not recoverable under the UCL.  See Korea Supply, 29 Cal. 4th at 1151.  The
4  California Supreme Court has specifically cautioned that the UCL must not be used as "an all-purpose
5  substitute for a tort or contract action."  Id.

6  **2.    Motion in Limine No. 2 – Exclusion of Keith Vorst's Expert Reports**

7  Defendant argues that Plaintiff's expert, Keith Vorst, should be precluded from testifying at
8  trial because he is not qualified to opine on the engineering of plastic agricultural crates.  Defendant
9  also argues that Dr. Vorst's supplemental expert reports should be stricken because they impermissibly
10 expand the scope of Dr. Vorst's initial expert report.

11 This motion in limine is DENIED.  First, Dr. Vorst is qualified to opine on the engineering of
12 plastic agricultural crates.  Dr. Vorst is a professor in the Department of Industrial Technology and
13 Packaging at California Polytechnic State University; has a master's of science degree in packaging;
14 teaches courses on plastics processing; and consults the agricultural industry on the production of hard
15 plastic injection molding for agricultural products.  This base of knowledge, experience, and education
16 qualifies Dr. Vorst as an expert on the engineering of plastic agricultural crates, and he may testify on
17 this matter.  See Fed. R. Evid. 702 (a witness is qualified as an expert by knowledge, skill, experience,
18 training, or education).

19 Second, Dr. Vorst's supplemental expert reports do not contain entirely new opinions.  In his
20 initial expert report, Dr. Vorst opined that certain aspects of the Second Generation Harvest Tote can
21 be traced to the Harvest Tote and are attributable to Ray Gerawan.  Although with slightly more detail
22 and with slightly greater force, these opinions are largely repeated in Dr. Vorst's supplemental reports.
23 Therefore, the Court finds Dr. Vorst's supplemental reports to be just that, supplements.  And in any
24 event, to the extent that there are any meaningful differences between Dr. Vorst's initial report and his
25 supplemental reports, Defendant had a full and fair opportunity to depose Dr. Vorst on those matters.
26 See Fed. R. Civ. P. 37(c)(1) (late reports need not be excluded if the late disclosure is harmless); Yeti
27 by Molly, 259 F.3d at 1106 (same).  Thus, for all these reasons, the Court declines to strike Dr. Vorst's
28 supplemental reports.

3. **Motion in Limine No. 3 – Use of the Term "Trade Secret"**

Defendant moves pursuant to Federal Rule of Evidence 403 to preclude Plaintiff from using or referencing the term "trade secret" when describing the information Plaintiff provided Defendant in connection with the Harvest Tote design. Defendant insists that "trade secret" is a "loaded" term that will unfairly bias the jury against Defendant.

This motion in limine is GRANTED. Use of the term "trade secret" arguably may prejudice Defendant. On the other hand, Plaintiff will not suffer any prejudice if it is required to use a phrase in lieu of "trade secret." Therefore, out of an abundance of caution, both parties shall refrain from using the term "trade secret" during trial. See Fed. R. Evid. 403.

4. **Motion in Limine No. 4 – Negotiations and Implied-In-Fact Agreements**

Defendant moves to preclude Plaintiff from offering evidence of "the negotiations surrounding or the alleged terms of any oral or implied-in-fact agreements relating to the Harvest Tote." (Doc. 122 at 1.) Defendant argues that such evidence is not relevant to this case and would be confusing for the jury. Defendant also contends that Plaintiff may not premise liability on a breach of an oral obligation because the statute of limitations for such a breach is two years.

This motion in limine is DENIED. Plaintiff has an interest in providing the jury context as to the parties' business relationship relating to the Harvest Tote. At this point, and as a general matter, the Court does not see a substantial threat of confusion or undue prejudice to Defendant if evidence of negotiations or an implied-in-fact agreement is presented to the jury. To the extent that Defendant is concerned that the jury may improperly find Defendant liable based on a breach of an oral obligation, Defendant may clarify that issue in the jury instructions and verdict form.

5. **Motion in Limine No. 5 – "Patent Pending"**

Defendant moves to preclude Plaintiff from referencing or offering evidence as to whether Defendant marks its products as "Patent Pending." Defendant insists that whether or not it marks its products as "Patent Pending" is irrelevant to this case.

This motion in limine is DENIED. It is true that allegations of false marking cannot form the basis of liability for any of the claims remaining in this case. However, exclusion of any reference or evidence of products marked "Patent Pending" sweeps too broadly. As Plaintiff rightly points out,

such an exclusion would theoretically preclude Plaintiff from showing the Second Generation Harvest Tote to the jury because it is marked "Patent Pending." To the extent that Defendant is concerned that false marking may improperly become a focus in this case, the better course is for Defendant to object to specific events at trial and to address the issue in the jury instructions and verdict form. See United States v. Randall, 162 F.3d 557, 559 (9th Cir. 1998) ("Ordinarily, cautionary instructions or other prompt and effective actions by the trial court are sufficient to cure the effects of improper comments, because juries are presumed to follow such cautionary instructions.").

### 6. Motion in Limine No. 6 – Promises or Agreements to Seek Patent Protection for the Harvest Tote

Defendant moves to preclude Plaintiff from referencing or offering evidence of any promise or agreement to seek patent protection for the Harvest Tote. Defendant contends that there is no claim in this case relating to such a promise or agreement.

This motion in limine is GRANTED IN PART and DENIED IN PART. The claim to be tried by the jury is whether Defendant engaged in "passing off" by selling the Second Generation Harvest Tote without Plaintiff's authorization. Whether Defendant promised to seek patent protection for the Harvest Tote is marginally relevant, at best, to this claim. There is, however, a substantial threat that the parties will waste time on this issue and confuse the jury as to the issues to be decided by it. For example, considerable time and energy will need to be expended explaining the differences between patent protection, which is not at issue, and trademark or trade name protection, which is. Therefore, Plaintiff is precluded from referencing or offering evidence *to the jury* of any specific agreement or promise to seek patent protection for the Harvest Tote. See Fed. R. Civ. P. 403. Nothing in this order precludes Plaintiff from referencing or offering evidence on this matter to the Court in connection with Plaintiff's UCL claim.[4]

///

---

[4] The Court will decide this claim. See, e.g., Soriano v. Countrywide Home Loans, Inc., Case No. 09-CV-2415 LHK, 2011 U.S. Dist. LEXIS 59714 (N.D. Cal. June 2, 2011) (reserving decision on the UCL claim for the Court because there is no right to a jury under the UCL). To the extent that the evidence to be presented to the jury differs from the evidence to be presented to the Court, the parties shall discuss and decide the logistics of accomplishing this.

**7.    Motion in Limine No. 7 – Promises or Agreements to Assign the Rights to Any Improvement, Modification, or Invention Related to the Harvest Tote**

Defendant moves to preclude Plaintiff from offering evidence of any promise or agreement to assign rights to any improvement, modification, or invention related to the Harvest Tote. Defendant contends that promises to assign may not form the basis of liability for Plaintiff's common law claim and that agreements to assign, or breaches thereof, may not from the basis of liability for Plaintiff's claim under the UCL.

This motion is DENIED. At this point, the Court is of the opinion that this issue should simply be addressed and clarified in the jury instructions and verdict form. As for Defendant's argument on breaches of contracts under the UCL, the Court has already addressed this matter in its order regarding the parties' supplemental briefing. (Doc. 164.)

**8.    Motion in Limine No. 8 – Promises or Agreements to Co-Own Patents for the Harvest Tote**

Defendant moves to preclude Plaintiff from referencing or offering evidence of any promise or agreement to co-own any patent for the Harvest Tote. Defendant argues that there is no claim relating to promises or agreements to co-own patents for the Harvest Tote and therefore evidence on this issue is irrelevant to this case.

This motion in limine is GRANTED IN PART and DENIED IN PART. Again, the claim to be decided by the jury is whether Defendant engaged in "passing off" by selling the Second Generation Harvest Tote without Plaintiff's authorization. Whether Defendant promised to seek patent protection for the Harvest Tote is marginally relevant, at best, to this claim; however, there is a substantial threat that the parties will waste time on this issue and unnecessarily confuse the jury. Therefore, consistent with the Court's ruling on Defendant's motion in limine number 6, Plaintiff is precluded from offering evidence to the jury of any specific promise or agreement to co-own patents for the Harvest Tote. See Fed. R. Civ. P. 403. Nothing in this order precludes Plaintiff from offering evidence on this matter to the Court in connection with Plaintiff's UCL claim.

///

///

**9.     Motion in Limine No. 9 – "Passing Off"**

Defendant moves to preclude Plaintiff from offering evidence of "passing off." This issue has been resolved by the Court in its order regarding the parties' supplemental briefing. (Doc. 164.) This motion in limine is therefore MOOT.

**10.    Motion in Limine No. 10 – Other Collaborative Projects**

Defendant moves to preclude Plaintiff from referencing or offering evidence of the parties' collaboration on products other than the Harvest Tote, the Second Generation Harvest Tote, and the Grape Lug. Defendant maintains that the parties' collaboration on other products is irrelevant to this case, would be a waste of the time for the jury to consider, and therefore should be precluded pursuant to Federal Rules of Evidence 401, 402, and 403.

This motion in limine is DENIED. Evidence regarding the parties' collaboration on products other than the Harvest Tote, the Second Generation Harvest Tote, and the Grape Lug *may* be relevant background on the parties' business relationship. Moreover, there is no clear risk of confusing the jury or prejudicing Defendant. Therefore, the Court will not completely preclude Plaintiff from *touching upon* these issues to the extent that Plaintiff believes that it would be worthwhile to do so. Plaintiff is forewarned, however, that the Court has no interest in dwelling on these issues, as they appear to have limited relevance to the merits of this case. At any point it becomes apparent that Plaintiff is spending inordinate time or attention on these matters, or is confusing the jury, Defendant may re-raise its Rule 402 and Rule 403 challenge.

IT IS SO ORDERED.

Dated:   **May 13, 2013**              /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE