1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT
8        FOR THE EASTERN DISTRICT OF CALIFORNIA
9

10   GERAWAN FARMING, INC.,                    Case No. 1:11-cv-1273 LJO BAM

11            Plaintiff,                       ORDER ON DEFENDANT'S MOTION FOR
                                               ATTORNEYS' FEES AND COSTS
12        vs.
                                               (Doc. 220)
13   REHRIG PACIFIC COMPANY,

14            Defendant.

15

16   _____/

17        Now pending before the Court is Defendant Rehrig Pacific Company's ("Rehrig's") motion for

18   attorneys' fees and costs.  Plaintiff Gerawan Farming, Inc. ("Gerawan") has filed an opposition to the

19   motion, and Rehrig has filed a reply.  Having considered the parties' submissions, and for the reasons

20   set forth below, the Court GRANTS IN PART and DENIES IN PART Rehrig's motion for attorneys'

21   fees and costs as follows.

22   **I.    BACKGROUND**

23        **A.    The Pleadings**

24        Gerawan initiated this action on July 29, 2011.  Gerawan alleged in its complaint that Rehrig

25   had wrongfully withheld patent and ownership interests in three containers used for storing fruit: the

26   Grape Lug, the Harvest Tote, and the Second Generation Harvest Tote.  (Doc. 1 ¶¶ 6-15.)  Based on

27   this, Gerawan asserted eight causes of action against Rehrig: (1) correction of patent inventorship as to

28   the Grape Lug pursuant to 35 U.S.C. § 256; (2) common law conversion; (3) unfair competition under

                                    1

California law; (4) common law unjust enrichment; (5) fraudulent concealment; (6) false promise; (7) unfair competition under 15 U.S.C. § 1125(a); and (8) accounting.  (Id. ¶¶ 16-59.)

On December 9, 2011, Rehrig moved to dismiss this action.  (Doc. 11.)  The Court granted in part and denied in part the motion to dismiss in an order filed March 2, 2012.  (Doc. 25.)  Specifically, the Court (1) denied the motion to dismiss with respect to Gerawan's claim to correct the inventorship of the Grape Lug; (2) granted the motion to dismiss without leave to amend with respect to Gerawan's claim for unfair competition pursuant to 15 U.S.C. § 1125(a); and (3) granted the motion with leave to amend in all other respects.

Gerawan filed an amended complaint on March 23, 2012.  (Doc. 26.)  In the process, Gerawan also voluntarily dismissed four of its causes of action without prejudice: (1) conversion; (2) fraudulent concealment; (3) unjust enrichment; and (4) accounting.  (Doc. 28.)  This left Gerawan proceeding on three causes of action: (1) correction of inventorship of the Grape Lug pursuant to 35 U.S.C. § 256; (2) false promise; and (3) unfair competition under California law.  (Doc. 26 ¶¶ 20-38.)

**B.    Discovery**

According to the initial scheduling order, all discovery, including any motions to compel, was to be completed by January 18, 2013.  (Doc. 37 at 2.)  However, on November 21, 2012, the assigned Magistrate Judge held a telephonic discovery conference and granted Gerawan's request to extend the deadlines for discovery.  (Doc. 39.)  Although the Magistrate Judge found that Gerawan had failed to demonstrate good cause to modify the scheduling order, the Magistrate Judge continued the deadline for all expert disclosures to December 7, 2012 and continued the deadlines for expert and non-expert discovery to February 8, 2013.  (Id.)  The Magistrate Judge explicitly cautioned both parties that "[n]o further modifications to the scheduling order would be permitted."  (Id.)

On January 18, 2013, both parties filed motions to compel discovery.  (Docs. 43 & 44.)  On February 8, 2013, the Magistrate Judge denied both motions to compel, explaining that (1) the motions were, in effect, untimely because any discovery compelled by the court could not be completed before the close of all discovery; (2) the parties had not moved to amend the scheduling order; and (3) even if a party had moved to amend the scheduling order, good cause did not exist to modify the deadlines for discovery.  (See Doc. 59 at 7-11.)

Mere hours after the Magistrate Judge issued the order denying the parties' motions to compel, Gerawan filed a motion to amend the scheduling order and a motion to amend its pleadings. (Docs. 60 & 65.) The Magistrate Judge denied both motions. The Magistrate Judge found that Gerawan had not demonstrated good cause to modify the scheduling order and that the discovery Gerawan sought was unnecessary to prove its existing claims. (See Doc. 73 at 6-14.) As for Gerawan's motion to amend its pleadings, the Magistrate Judge concluded that leave to amend was unwarranted because Gerawan was not diligent and that amendment at that late hour would dramatically expand the scope of the case to the prejudice of Rehrig. (See Doc. 89 at 8-14.)

On March 7, 2013, Gerawan filed a motion for reconsideration of the Magistrate Judge's order denying its motion to amend the scheduling order (Doc. 90), and on March 25, 2013, Gerawan filed a motion for reconsideration of the Magistrate Judge's order denying its motion to amend its pleadings (Doc. 96). This Court denied both motions. (Docs. 95 & 104.)

**C.       Summary Judgment**

Rehrig moved for summary judgment on February 14, 2013. (Doc. 69.) The Court granted in part and denied in part the motion. (Doc. 100.) The Court granted Rehrig summary judgment on (1) Gerawan's claim for correction of inventorship of the Grape Lug; and (2) Gerawan's claims for false promise. (See id. at 10-16.) The Court denied Rehrig summary judgment with respect to Gerawan's cause of action for unfair competition under California law, which as a result, became the sole cause of action left in the case. (See id. at 17-20.)

**D.       Pretrial**

The Court held a pretrial conference on April 18, 2013, and following the pretrial conference, the Court issued an order requesting further briefing on Gerawan's unfair competition cause of action. (Doc. 108.) Despite the Court ordering the parties "to be precise" and to distill fully their positions on Gerawan's remaining claims (Doc. 100 at 22), the parties' joint pretrial statement presented a scattered laundry list of issues. Most disconcerting, it was unclear whether Gerawan's unfair competition cause of action even had any merit.

Following a round of abbreviated briefing, the Court decided against granting Rehrig summary judgment *sua sponte* on Gerawan's unfair competition cause of action in its entirety. (Doc. 164.) It

appeared that Gerawan had at least some evidence to support a common law unfair competition claim for "passing off."  And in the end, because the record was just too cloudy, and out of an abundance of caution, Gerawan was allowed to move forward on that theory of liability.  (Id. at 2-3.)  Gerawan was also allowed to proceed on a claim under the "unfair" prong of California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code § 17200.  (Id. at 3-6.)

Despite the Court's attempt to narrow the issues and to distill this case, this case became more unwieldy as trial drew nearer.  First, Gerawan sought to modify the pretrial order to add several new witnesses and exhibits to support its common law claim.  (Doc. 172.)  Next, Gerawan suggested in its proposed jury instructions that its common law claim was not limited to passing off but also included misappropriation as a theory of liability.  Lastly, the parties were unable to reach any consensus on the jury instructions for the existing claims.

In response, the Court rejected the idea that Gerawan's common law unfair competition claim included any misappropriation theory of liability.  (See Doc. 204 at 1-4.)  To the extent that Gerawan disagreed and believed that proceeding with a trial on its then-existing claims would be of no positive consequence, the Court allowed Gerawan to file a stipulation entering judgment.  (Id. at 5.)  Gerawan accepted the Court's offer, and on the eve of trial, on June 4, 2013, the parties stipulated to dismiss the following claims with prejudice (1) Gerawan's claim under the UCL; and (2) Gerawan's common law unfair competition claim for passing off.  (Doc. 211.)

### E.     The Instant Motion

On July 2, 2013, Rehrig filed the instant motion for attorneys' fees and costs.  Rehrig contends that an award of attorneys' fees and costs is warranted pursuant to (1) 35 U.S.C. § 285; (2) 15 U.S.C. § 1117(a); (3) 28 U.S.C. § 1927; and (4) the Court's inherent power over cases before it.  Gerawan filed an opposition to the motion, and Rehrig filed a reply.

## II.   DISCUSSION

### A.     35 U.S.C. § 285

Under § 285, a court may award reasonable attorneys' fees to the prevailing party.  Whether an award of attorneys' fees is warranted under this section entails a "two-step process."  Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003).  First, the prevailing party must show by "clear

and convincing evidence" that the case is "exceptional." Id. (citations omitted).  A case is exceptional where the losing party's claims were "frivolous," where there was "inequitable conduct" before the Patent and Trademark Office, or where there was "misconduct during the litigation."  Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d 1300, 1308 (Fed. Cir. 2012).  See also Forest Labs., 339 F.3d at 1329 ("We have repeatedly identified as exceptional those cases involving inequitable conduct before the [Patent and Trademark Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.") (citations and internal quotation marks omitted).  "Second, if the case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award."  Highmark, 687 F.3d at 1308 (citing Forest Labs., 339 F.3d at 1328).

### 1.    Frivolousness

Rehrig argues that this case is exceptional because Gerawan's claim to correct the inventorship of the Grape Lug was frivolous.  A claim is frivolous for the purposes of § 285 only if two criteria are met: (1) the claim was objectively baseless; and (2) the claim was brought in subjective bad faith.  See id. at 1308; MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 916 (Fed. Cir. 2012).  In other words, the losing party's claim must have had no objective foundation *and* the losing party must have known this.  See iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011).  For the reasons set forth below, the Court does not find that there is clear and convincing evidence establishing that Gerawan's claim for correction of inventorship was frivolous.

### a.    Objectively Baseless

"To be objectively baseless, the . . . allegations must be such that no reasonable litigant could reasonably expect success on the merits."  Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citations and internal quotation marks omitted).  Here, Rehrig maintains that no reasonable litigant could have expected to prevail on the merits of Gerawan's claim for correction of inventorship because Gerawan's evidence fell well short of the clear and convincing evidence required for a party to prevail on such a claim.  Rehrig emphasizes that in opposing Rehrig's motion for summary judgment, Gerawan offered no documentary evidence regarding Ray Gerawan's ("Mr. Gerawan's") contributions to the Grape Lug; Mr. Gerawan himself could not recall what ideas

he contributed to the Grape Lug; and David Dever ("Mr. Dever") – Gerawan's alleged corroborating witness – also could not identify what exactly Mr. Gerawan contributed or when the alleged inventive ideas were shared.

To be sure, there were notable gaps in Gerawan's evidence, particularly Mr. Gerawan's utter inability to remember anything of substance that would support Gerawan's correction of inventorship claim. Nevertheless, Gerawan was still able to produce *other* evidence that lent at least some basis of support for its claim, most notably Mr. Dever's deposition testimony.[1] Mr. Dever testified, generally, that he believed Mr. Gerawan made inventive contributions to the Grape Lug's design at meetings he himself attended. While this evidence did not ultimately rise to the level of proof necessary to survive summary judgment, especially in light of the evidence presented by Rehrig, the Court cannot conclude that Gerawan's claim was entirely unsupported and baseless. See Professional Real Estate Investors v. Columbia Pictures Industries, 508 U.S. 49, 61 n. 5 (1993) ("[A] court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.") (citations omitted); see also Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1315 (Fed. Cir. 2010) ("Defeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless[, and therefore exceptional, under § 285].").

Rehrig's attempt to analogize this case to Gabriel Technologies Corp. v. Qualcomm Inc., Civil No. 08cv01992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105 (S.D. Cal. Feb. 1, 2013) is unpersuasive. In Gabriel Technologies, a district court ruled that the plaintiffs' claims for correction of inventorship were objectively baseless because the plaintiffs pursued their claims for almost four years despite the fact that they at no point knew the identities of the inventors who they claimed were wrongly omitted from the disputed patents. Id. at *12. Indeed, in opposing summary judgment, the plaintiffs were not

---

[1] Rehrig suggests that Gerawan's acquisition of Mr. Dever's testimony to support its correction of inventorship claim was nothing but a fortuitous afterthought. (See Doc. 220-1 at 7.) But the present record is not entirely clear on this matter. Gerawan identified Mr. Dever as a potential witness in its initial disclosures, but Gerawan did not clearly indicate that Mr. Dever had information regarding the inventorship of the Grape Lug. (See Doc. 221-16 at 3.) In any event, even if Mr. Dever's testimony was a fortuitous afterthought, that does not detract from the fact that, from an objective standpoint, Gerawan had *some* evidence to support its claim.

able to find any individuals who would take credit for inventing the disputed patents or would profess knowledge of any specifics relating to the patents.  Id. at *13.  This case, however, does not reach that level of frivolousness.  Whereas the plaintiffs in Gabriel Technologies had an obvious, fundamental gap in their patent claims, see id. at *17 ("Plaintiffs brought and maintained claims without knowing the identity of the allegedly omitted inventors, *the most basic prerequisite for a successful . . . claim.*") (emphasis added), the evidentiary weakness in Gerawan's  claim was not so glaring. Again, while Mr. Gerawan's testimony was remarkably lacking in probative value, Gerawan was still able to offer *some* evidence of Mr. Gerawan's alleged inventive contributions (e.g., Mr. Dever's testimony), even if that evidence did not ultimately defeat summary judgment.

### b.      Subjective Bad Faith

Further, the Court does not find clear and convincing evidence of subjective bad faith.  Unlike the cases cited by Rehrig, it is not readily apparent from the record in this case that Gerawan pursued its claim knowing that it was objectively baseless.  Cf. MarcTec, 664 F.3d at 917-18 (bad faith found where the record showed (1) the plaintiff's position during the case directly contradicted the inventor's position advanced before the Patent Office; (2) the plaintiff was aware of and possessed documentary of this contradiction; and (3) the plaintiff nevertheless pursued its correction of inventorship claim by relying on inadmissible expert testimony and mischaracterizations in the patents' claim construction); Gabriel Technologies, 2013 U.S. Dist. LEXIS 14105, at *10, 13-16 (bad faith found where the record showed the plaintiffs pursued their correction of inventorship claims despite the fact that (1) internal emails indicated that the plaintiffs knew there was no evidentiary basis for the claims; and (2) during a bond hearing, the court found that there was no evidentiary support for the plaintiffs' claims and there was "a strong likelihood Defendants will ultimately prove this case is exceptional, and attorneys' fees will be warranted at the conclusion of the litigation").

Nor is it clear that Gerawan engaged in bad faith conduct when it filed but delayed service of its complaint, while at the same time, offering to settle the case with Rehrig.  Rehrig characterizes this conduct as "pay me or I'll sue" extortion.  (Doc. 220-1 at 9.)  But without further details regarding this matter, it is unclear whether this amounted to some form of extortion, as Rehrig claims, or an ordinary attempt to settle the case, as Gerawan presumably contends.  Cf. Eon-Net LP v. Flagstar Bancorp, 653

1  F.3d 1314, 1326-27 (Fed. Cir. 2011) (finding "indicia of extortion" where the record showed that the

2  plaintiff had a history of filing virtually identical patent actions against defendants and then offering a

3  quick settlement at a price far lower than the cost of litigation).

### 2.      Litigation Misconduct

4

5      Rehrig also argues that this case is exceptional because Gerawan engaged in several instances

6  of litigation misconduct during this case.  Specifically, Rehrig maintains that Gerawan (a) made false

7  representations regarding Mr. Gerawan's assignment of his rights in the '293 Patent; (b) filed frivolous

8  motions and vexatiously attempted to relitigate issues that had already been settled by the Court; and

9  (c) repeatedly attempted to smuggle evidence into trial.

### a.      False Representations

10

11      "Litigation misconduct generally involves unethical or unprofessional conduct . . . during the

12  course of adjudicative proceedings."  Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539,

13  549 (Fed. Cir. 2011) (citations omitted).  Here, the Court finds that Gerawan's representations during

14  this case regarding Mr. Gerawan's assignment of patent rights to Gerawan were so lacking in candor

15  and so fraught with deceptive intent that they constitute, as a whole, litigation misconduct.  In order to

16  understand the Court's position, it is important to understand the full context in which this issue arose

17  during the course of the proceedings.

18      From the very beginning, Gerawan alleged that it was the assignee of Mr. Gerawan's interests

19  in the '293 Patent.  (Doc. 1 ¶ 1; Doc. 26 ¶ 25.)  However, Gerawan did not produce, or identify in any

20  way, any documentary evidence of this in its initial disclosures.  And when Rehrig requested Gerawan

21  to produce evidence of any written assignment of patent interests between Mr. Gerawan and Gerawan

22  during discovery, Gerawan objected to the request on the ground that it was ambiguous and irrelevant,

23  among other things.  (Doc. 45 at 17.)

24      As a result, Rehrig filed a motion to compel on January 18, 2013.  (Doc. 44.)  Rehrig moved to

25  compel production of "[a]ll documents and communications relating to assignment of inventions and

26  patents to Gerawan, including assignments between Ray Gerawan and Gerawan."  (Doc. 45 at 17.)  In

27  Rehrig's view, the existence of a written assignment of rights between Mr. Gerawan and Gerawan was

28  a critical issue in this case.  Rehrig maintained that absent any assignment of rights, Gerawan (the only

plaintiff in this action) lacked standing to sue because without the assignment Gerawan had no interest in the '293 Patent.  (See id. at 17-18.)

What happened next lays at the heart of this issue.  Gerawan responded that it already agreed to produce *the* written assignment in question, effectively rendering Rehrig's request moot.  Specifically, Gerawan stated: "Gerawan agree[s] to produce *the* responsive document.   Once again Rehrig chose to proceed with a motion to compel Gerawan to produce a document that it already agreed to produce." (Doc. 46 at 17) (emphasis added).  The only reasonable interpretation of this representation, especially when viewed along with Gerawan's pleadings, is that (1) a written assignment of patent rights between Mr. Gerawan and Gerawan *already existed* (i.e., Mr. Gerawan assigned his patent rights to Gerawan in writing at some point *prior to* January 25, 2013, the date on which Gerawan made this representation); and (2) Gerawan agreed to produce *that* document.[2]

That is not, however, what Gerawan produced.  Without ever indicating to Rehrig that it was producing anything other than what it had seemingly promised to produce in response to the motion to compel, Gerawan sent Rehrig a document on February 4, 2013, entitled "Confirmation of Assignment between Ray Gerawan and Gerawan Farms, Inc."  (Doc. 69-7 ¶ 9.)  The document, which purports to be effective  as of July 1, 1993, asserts that by virtue of Mr. Gerawan's position at Gerawan, Gerawan received equitable ownership of Mr. Gerawan's rights and interests in certain inventions.  (Doc. 69-7, Ex. G.)  The document is signed by both Mr. Gerawan and Dan Gerawan, the President of Gerawan. (Id.)  Oddly and most critically, however, *no date is written in the spaces provided for the date next to both signature lines*.  (Id.)

Rehrig cried foul.  In moving for summary judgment, Rehrig argued that the document was not what Gerawan was holding it out to be.  (See Doc. 69-1 at 21.)  Rehrig opined that while the document was suspiciously undated, there could be no doubt that it did not exist at the time of Rehrig's motion to compel; in fact, according to Rehrig, the document was created just two weeks before Rehrig filed its motion for summary judgment.  (Id.)  As proof, Rehrig pointed to the document identification number

---

[2] Indeed, the assigned Magistrate Judge granted Rehrig's document request partly for that very reason. (See Doc. 48 at 6.) ("Moreover, Gerawan has agreed to provide this document.").

marked on Gerawan's "Confirmation of Assignment" document: SMRH:407961486.1.[3]  (Doc. 69-7 ¶ 9, Ex. G.)  That number was sequentially higher than another document, SMRH:407951441.1, which had been created and produced by Gerawan's counsel just two weeks ago on January 30, 2013.  (Doc. 69-7 ¶ 8, Ex. F.)  Rehrig argued that this proved that the "Confirmation of Assignment" document was created only recently.  (Doc. 69-1 at 22.)  Rehrig's counsel attested to this, explaining that he is well-familiar with Sheppard Mullin's document management and numbering system because he worked for that law firm from June 2005 through April 2011.[4]  (Doc. 69-7 ¶ 8.)

The Court finds Rehrig's evidence persuasive and is convinced that Gerawan manufactured the "Confirmation of Assignment" hoping that Rehrig would be misled.  By virtue of its pleadings and its response to Rehrig's motion to compel, Gerawan created the impression that a written assignment of patent rights existed.  But, as Gerawan well knew, such a document did not actually exist.  So instead, Gerawan manufactured an undated, ambiguous document that had the potential to mislead Rehrig into believing that a written assignment existed.  The benefit to Gerawan of such a rouse was significant: if Rehrig could be misled into believing that a written assignment existed prior to the filing of this case, this would fatally undermine Rehrig's argument that Gerawan lacked standing regarding its correction of inventorship claim.[5]

The Court is not persuaded by Gerawan's arguments to the contrary.  Gerawan maintains that it "never presented the Confirmation of Assignment as evidence of a formal assignment that existed prior to the filing of this case."  (Doc. 221 at 13.)  But while it may be true that the document is titled "confirmation" and that Gerawan never *affirmatively* represented to Rehrig that the document was an original assignment created before the filing of this case, there is convincing evidence that Gerawan

---

[3] SMRH evidently stands for "Sheppard, Mullin, Richter & Hampton, LLP," the law firm representing Gerawan in this case.

[4] As further evidence on this matter, the Court notes that Gerawan's most recently filed documents in this case are SMRH:409644197.1 and SMRH:409751165.1.  (Docs. 221 & 224.)  These documents, which have sequentially higher numbers than the two documents referenced above, were filed on July 16, 2013, and July 26, 2013, respectively.  This further confirms Rehrig's hypothesis.

[5] Even though Gerawan ultimately survived summary judgment  on the issue of standing based on its alternate alter ego theory, it was far from clear at that point that the Court would actually be persuaded by and adopt the alter ego theory.

took several intentional steps that, while short of an affirmative misrepresentation, created a situation

where Rehrig could have been (and Gerawan hoped that Rehrig would be) deceived into believing that

such was the case.

First, as already discussed above, Gerawan created the impression that there had been a written

assignment of patent rights before the filing of this case (and certainly before January 25, 2013), when

in fact, Gerawan knew that this was not true.  Second, the "Confirmation of Assignment" is not dated.

It is difficult to imagine an attorney overlooking such a glaring mistake in a legal document unless that

"mistake" was intentional.  Third, even after the true nature of the "Confirmation of Assignment" had

been discovered, Gerawan was far from candid on the issue.  In response to Rehrig's accusations in its

motion for summary judgment, Gerawan's counsel asserted:

> The Confirmation of Assignment (Doc. 69-7, Ex. G) was produced on January 30,
> 2013, but was created before that date. [Rehrig's counsel's] logic that the Confirmation
> had to have been created after January 30, 2013, based on Sheppard Mullin's internal
> document numbering system is incorrect: the comparative document referenced (Doc.
> 69-7, Ex. H) was also created prior to the January 30, 2013, date it was served on
> opposing counsel.

(Doc. 81 ¶ 14.)  This dodges the main question (whether Gerawan manufactured evidence in response

to Rehrig's motion to compel) and leaves just enough ambiguity for one to believe, erroneously, that

the "Confirmation of Assignment" was created long ago.  Moreover, Gerawan continued to foster this

false impression when it listed the document's date as July 1, 1993, in its trial exhibit list.  (Doc. 190

at 2.)  Absent an intent to deceive, it is hard to explain why Gerawan listed the document's "effective

date," when, with respect to all the other documents in the exhibit list, Gerawan appears to have listed

the documents' date of creation.[6]  (See id. at 2-18.)

Gerawan also argues that "Rehrig was informed that the Confirmation did not exist before the

filing of this suit, and acknowledged in its pleadings that no such assignment existed prior to January

30, 2013."  (Doc. 221 at 13) (alterations, quotation marks, and citation omitted).  The Court disagrees.

There is no indication in the record that Gerawan made any attempt to clarify for Rehrig the nature of

---

[6] Gerawan knew when the "Confirmation of Assignment" was created.  In a footnote buried in its most
recent filing (a filing submitted nearly six months after this dispute first erupted), Gerawan finally
concedes that the "Confirmation of Assignment was created and signed sometime between January 27
and January 30, 2013."  (Doc. 224 at 1 n.1.)

the "Confirmation of Assignment" prior to now.  In fact, as explained above, Gerawan apparently took

several steps to *muddy* the issue.  The only reason why Rehrig became "informed" that the document

was actually created at some point after January 25, 2013 was because Rehrig uncovered that fact (in

detective-like fashion) on its own.  Gerawan cannot now disclaim responsibility for its misconduct by

arguing that its efforts were unsuccessful.

In sum, the Court finds that Gerawan's representations throughout this case pertaining to Mr.

Gerawan's assignment of patent rights to Gerawan were made in bad faith and, as a whole, constitute

litigation misconduct.  Gerawan's claim for correction of inventorship is thus exceptional under § 285.

See Forest Labs., 339 F.3d at 1329.

**b.    Frivolous Motions**

Rehrig also argues that Gerawan filed frivolous motions and vexatiously attempted to relitigate

settled issues.  In particular, Rehrig protests Gerawan's persistent attempts to keep discovery open and

to amend its pleadings.

 The Court finds that this conduct does not rise to the level of litigation misconduct.  Although

Gerawan doggedly sought additional discovery as the discovery deadline came and past, it is not clear

that any of this was done in bad faith.  Gerawan's position was weak, partly because of its own lack of

diligence, but the Court does not find that Gerawan's efforts were patently vexatious.  The same is true

with respect to Gerawan's attempt to amend its pleadings.  Most of Gerawan's proposed amendments,

such as Gerawan's proposed claim for false patent marking under 35 U.S.C. § 292, were not frivolous

and were denied only because further discovery could not be had given the posture of the case.  And

while Rehrig contends that Gerawan's requests for reconsideration on all of these matters underscore

the vexatious nature of Gerawan's actions, the Court is not convinced.  See Simpson v. Lear Astronics

Corp., 77 F.3d 1170, 1174 (9th Cir. 1996) (in order to preserve the right to appeal a magistrate judge's

nondispositive order, a litigant must seek reconsideration of that order with the district judge); see also

World Wide Stationery Mfg. Co., Ltd. v. U.S. Ring Binder, No. 4:07-CV-1947 (CEJ), 2010 U.S. Dist.

LEXIS 51735, at *9 (E.D. Mo. May 25, 2010) (declining to find litigation misconduct despite the fact

that the plaintiff filed numerous motions for reconsideration).

///

### c.  Smuggling Evidence

Lastly, Rehrig contends that Gerawan repeatedly attempted to smuggle evidence into trial.  In particular, Rehrig contends that Gerawan sought admission of untimely expert reports and attempted to inject new evidence into this case long after the pretrial order had been issued.

The Court finds these matters to be irrelevant to its analysis under § 285.  None of this conduct arose in connection with Gerawan's correction of inventorship claim. For example, the issue regarding the injection of new evidence after the filing of the pretrial order arose in connection with Gerawan's *unfair competition claims* and occurred *after* the Court had already granted Rehrig summary judgment on Gerawan's correction of inventorship claim.  This conduct, therefore, cannot support an attorneys' fee award under § 285.  As the Federal Circuit explained: "[W]hen an action embraces both patent and non-patent claims, no fees under § 285 can be awarded for time incurred in litigation of the non-patent issues." Machinery Corp. of America v. Gullfiber AB, 774 F.2d 467, 475 (Fed. Cir. 1985).  See, e.g., Hammerton, Inc. v. Heisterman, No. 2:06-CV-806 TS, 2008 U.S. Dist. LEXIS 65483 at *18 (D. Utah Aug. 25, 2008) (declining to consider alleged litigation misconduct that was unrelated to the plaintiff's patent claims in determining whether attorneys' fees were warranted under § 285).

### 3.  Amount of Attorneys' Fees

### a.  Scope of the Award

If a court deems a case exceptional, it must then determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award.  Highmark, 687 F.3d at 1308.  "Even an exceptional case [may] not require in all circumstances [an] award of attorney fees."  S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986).  This determination rests within the sound discretion of the court, which is "in the best position to weight considerations . . . that may contribute to a fair allocation of the burdens of litigation[.]"  Id.

Exercising its discretion here, the Court declines to award Rehrig attorneys' fees under § 285 for litigating every aspect of Gerawan's correction of inventorship claim.  The litigation misconduct found above (i.e., Gerawan's representations regarding Mr. Gerawan's assignment of patent rights to Gerawan) was confined to a discrete issue, which did not dramatically affect or alter Rehrig's defense of Gerawan's correction of inventorship claim.  As suggested above, Rehrig quickly realized the actual

13

nature of Gerawan's "Confirmation of Assignment" and immediately raised the issue in its motion for summary judgment.  In response, Gerawan noted, but did not fully rely on, the document as evidence of its standing.  The Court resolved the standing issue without citing or relying on the "Confirmation of Assignment."  Thereafter, other than one minor issue regarding Gerawan's pretrial exhibit list, the document did not play any role in the case.

Where, as here, the litigation misconduct at issue does not pervade the entirety of the case, a court should only award attorneys' fees for matters that were actually related to the misconduct.  See Highmark, 687 F.3d at 1316; Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553 (Fed. Cir. 1989).  Here, Gerawan's litigation misconduct manifested itself in portions of (1) Rehrig's motion to compel discovery and (2) Rehrig's motion for summary judgment.  The Court will therefore award Rehrig reasonable attorneys' fees to compensate it for incurring those "extra legal effort[s]." Beckman, 892 F.2d at 1553 (emphasis omitted).

### b.  "Lodestar" Calculation

In order to determine the amount of this award, the Court begins with the "lodestar" figure by multiplying the number of hours reasonably expended by a reasonably hourly rate.  See Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1068 (Fed. Cir. 1983); Maxwell v. Angel-Etts of Cal., Inc., 53 Fed. Appx. 561, 568 (Fed. Cir. 2002).  The lodestar figure may then be adjusted upward or downward based on a number of factors, such as the nature of the relationship between the attorney and the client, that is not already subsumed by the lodestar calculation.  See Maxwell, 53 Fed. Appx. at 568; accord Morales v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996).[7]  Adjustments to the lodestar are "rare," however, since there is a "strong presumption" that the lodestar figure represents a reasonable award.  Pennsylvania v. Delaware Valley Citizens' Council for Clear Air, 478 U.S. 546, 565 (1986); Morales, 96 F.3d at 364 n.8.

---

[7] The Ninth Circuit has endorsed the following factors for a court to consider: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Morales, 96 F.3d at 363 n.8 (quoting Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

### i.      Reasonable Hourly Rate

The established standard for determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Camacho v. Bridgeport Fin. Inc., 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).  The following hourly rates charged by Rehrig's attorneys in this case are reasonable in light of their skill, experience, and reputation and the prevailing rate in Fresno, California for similar work performed by attorneys of comparable skill, experience, and reputation.

| Attorney | Requested Rate | Skill, Experience, and Reputation |
|----------|----------------|-----------------------------------|
| Mark Slater | $475/hr. | Mr. Slater is an experienced business litigation attorney with more than 25 years of experience who, prior to founding Slater, Hersey & Lieberman, was a litigation partner at several international law firms, including Sheppard, Mullin, Richter & Hampton, LLP; Bingham McCutchen LLP; and Sonnenshein, Nath & Rosenthal. |
| Jonathan Hersey | $375/hr. | Mr. Hersey is an experienced business litigation attorney with more than 15 years of experience who, prior to founding Slater, Hersey & Lieberman, was an equity partner at Sheppard, Mullin, Richter & Hampton, LLP. |
| Daniel Marsh | $150/hr. | Mr. Marsh started practicing in 2012 as a junior litigation associate at Sheppard, Mullin, Richter & Hampton, LLP. |

Cf. Bond v. Gerguson Enters., Case No. 1:09-cv-1662 OWW MJS, 2011 U.S. Dist. LEXIS 70390, at *29-31 (E.D. Cal. June 30, 2011) (noting that in general the prevailing hourly rate in this district is "in the $400/hour range" for experienced attorneys).

As for the remaining attorneys, the Court finds that Rehrig has not offered persuasive evidence showing that their requested rates are justified.  Rehrig offers evidence that its requested rates for these attorneys are in-line with the market rates in the "Southern California and Northern California areas." (Doc. 220-2; see Doc. 220-2, Ex. B.)  But this evidence misses the mark.  The relevant rate is the one that prevails in this specific forum: Fresno, California.  See Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997) ("Generally, the relevant community is the forum in which the . . . court sits."); Jadwin v. County of Kern, 767 F. Supp. 2d 1069, 1124-25 (E.D. Cal. 2011) (stating that the relevant community

for cases in the Eastern District of California, Fresno Division is Fresno, California).  Therefore, in the absence of satisfactory evidence supporting these attorneys' requested fee, the Court will reduce these rates in accordance with the Court's own experience and knowledge of the market rate in Fresno.  <u>See</u> <u>Ingram v. Oroudijian</u>, 647 F.3d 925, 928 (9th Cir. 2011) (a district court may rely, in part, on its own knowledge and experience of the community to set a reasonable hourly rate).

| Attorney | Requested Rate | Awarded Rate | Skill, Experience, and Reputation |
|---|---|---|---|
| Elise Sara | $300/hr. | $275/hr. | Ms. Sara is a senior associate with Slater, Hersey & Lieberman  She has more than five years of litigation experience. |
| Neil Cooper | $250/hr. | $225/hr. | Mr. Cooper started practicing in 2011 and is a junior litigation associate at Slater, Hersey & Lieberman. |

Lastly, the $75 per hour rate charged by Rehrig's legal assistants in this case is reasonable.  <u>Cf.</u> <u>Franco v. Ruiz Food Products, Inc.</u>, Case No. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *56 (E.D. Cal. Nov. 27, 2012) (awarding $100/hr. for legal assistants); <u>Bond</u>, 2011 U.S. Dist. LEXIS 70390, at *31 (same).

### ii.      Reasonable Hours Expended

"The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F.3d 942, 945-46 (9th Cir. 2007) (citation omitted).  The documentation does not need to be of "great detail," but it must at least identify the "general subject matter" of all the hours expended.  <u>Hensley</u>, 461 U.S. at 437 n.12.  A judge must be able to make a fair evaluation of the time expended and the nature and need for the service.  <u>United Steel Workers of Am. v. Retirement Income Plan</u>, 512 F.3d 555, 565 (9th Cir. 2008).

It is not precisely clear here how much time Rehrig expended combatting Gerawan's litigation misconduct.  In its fee motion, Rehrig generally organizes its requests for fees by claim.  For example, Rehrig approximates that it incurred $178,626.22 in attorneys' fees and costs for litigating Gerawan's correction of inventorship claim for the year between  the Court's ruling on Rehrig's motion to dismiss and the Court's order on Rehrig's motion for summary judgment.  (Doc. 220-1 at 29-30.)  While this

estimate may have been sufficient had the Court determined that Rehrig is entitled to attorneys' fees for all its work defending against Gerawan's correction of inventorship claim, the Court has concluded that the scope of the award should not be that broad; Rehrig is only entitled to attorneys' fees incurred as a result of Gerawan's litigation misconduct. As such, Rehrig's current attorneys' fee estimates are not particularly helpful.

Accordingly, in the interest of being thorough and fair, the Court will defer ruling on the amount of Rehrig's award under § 285 and will allow additional briefing on this matter. Rehrig shall estimate the hours spent combatting Gerawan's misleading representations regarding Mr. Gerawan's assignment of his patent rights, particularly in (1) Rehrig's motion to compel and (2) Rehrig's motion for summary judgment.[8] Also, to the extent possible, Rehrig shall provide the Court with additional documentation supporting its estimate.[9]

**B.      15 U.S.C. § 1117(a)**

The Lanham Act permits a court to award attorneys' fees to the prevailing party, but only if the case is "exceptional." 15 U.S.C. § 1117(a). The Ninth Circuit construes this requirement "narrowly." Classic Media, Inc. v. Mewborn, 532 F.3d 978, 990 (9th Cir. 2008). In the Ninth Circuit, a case may be deemed exceptional under § 1117(a) if it is "groundless, unreasonable, vexatious, *or* pursued in bad faith." Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co., 668 F.3d 677, 687 (9th Cir. 2011) (citation omitted) (emphasis added).

Rehrig argues that Gerawan's Lanham Act claim was groundless and unreasonable. A claim is groundless or unreasonable if it does not raise at least a "debatable issue of law [or] fact." Stephen W. Boney, Inc. v. Boney Servs., 127 F.3d 821, 827 (9th Cir. 1997). As one district court explained:

> A claim is considered factually groundless where there is no reasonable basis to believe in the factual allegations underlying the claim and is considered legally groundless where there is no legal basis for the claim itself, which instead rests on absurd or just short of frivolous contentions of law.

---

[8] Rehrig has provided the Court with all of its itemized client billing statements. However, Rehrig is in a better position to ferret through these voluminous records to determine which items are connected to combatting Gerawan's misconduct.

[9] For example, in Rehrig's billing statements the task descriptions are stated in general terms such as: "Drafted motion for summary judgment." (Doc. 220-2 at 80.) If Rehrig can provide documentation that offers additional detail for these tasks, that would be particularly helpful to the Court.

Brown v. Elec. Arts, Inc., 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010) (citation and internal quotation marks omitted).  For all the reasons set forth below, the Court agrees with Rehrig; Gerawan's Lanham Act claim, as alleged, was groundless.

The premise of Gerawan's Lanham Act claim was that Rehrig has been wrongfully and falsely suggesting that Rehrig is "the sole source or inventor of the Harvest Tote [and] the Second Generation Harvest Tote." (Doc. 1 ¶ 53.)  In other words, Gerawan claimed that Rehrig has wrongfully failed to attribute, or otherwise disclose to the consuming public, that Gerawan is a source of origin or inventor of the Harvest Tote and the Second Generation Harvest Tote.  There appears to be no factual basis for this allegation.  Several witnesses, including Mr. Gerawan himself, testified that *Gerawan* consciously and explicitly instructed Rehrig not to market the Harvest Tote as being associated with Gerawan out of fear that Gerawan's competitors would not buy the product.  (Doc. 131-1, Ex. A at 62:13-63:6, Ex. B. at 111:13-112:7, Ex. C. at 198:11-199:9.)  There is also no legal basis for the claim.  As the Court explained in its order dismissing this claim, designations of origin under § 1125(a) of the Lanham Act refer to denoting the producer of the tangible goods offered to consumers for sale, not the inventor or creator of the designs that the goods embody.  See Dastar Corp., v. Twentieth Century Fox Film Corp., 539 U.S. 23, 31-32, 37 (2003).  As such, any claim that Rehrig violated § 1125(a) by failing to identify to consumers that Gerawan is an inventor of the Harvest Tote and the Second Generation Harvest Tote fails.  (See Doc. 25 at 5-6.)

Gerawan's opposition papers to Rehrig's motion to dismiss provided no legal authority to the contrary.  Gerawan spent much of its two pages of briefing countering Rehrig's argument that Rehrig had a legal right to *sell* the Harvest Tote and the Second Generation Harvest Tote.  However, that was not the claim Gerawan pled in its complaint, nor was it the claim the Court ultimately addressed in its order.  (See Doc. 1 ¶ 53) (alleging that Rehrig violated § 1125(a) *by wrongfully and falsely suggesting that Rehrig is the sole source or inventor of the Harvest Tote or the Second Generation Harvest Tote*); (Doc. 25 at 6-7) (dismissing "any claim that Gerawan should have been identified as a source of origin of [the Harvest Tote and/or the Second Generation Harvest Tote]" without leave to amend).  The only relevant case law Gerawan offered was a single citation to a decision by this Court and a parenthetical

///

18

regarding palming off.  However, as the Court explained in its order, the claim at issue in that decision was readily differentiable from the claim asserted in this case.[10]

Gerawan notes that the Court did not grant Rehrig summary judgment on Gerawan's state law unfair competition claims to the extent that it involved allegations of "passing off."  But that fact does not show that Gerawan's alleged Lanham Act claim had merit; in fact, it only further establishes that Gerawan's Lanham Act claim was groundless.  Gerawan was allowed to proceed to trial on a theory of passing off because it appeared there was some evidence suggesting that Rehrig was using Gerawan's association with the Harvest Tote to confuse consumers into believing that Gerawan was also affiliated with producing the Second Generation Harvest Tote.  (See Doc. 164 at 2-3.)  In other words, Gerawan was attempting to prove, and there appeared to be some evidence, that Rehrig was trying to *associate* Gerawan with the Harvest Tote and the Second Generation Harvest Tote.  This runs directly counter to Gerawan's Lanham Act claim, wherein Gerawan alleged that Rehrig wrongfully *dissociated* Gerawan from the Harvest Totes.

Even when a court finds a claim groundless under the Lanham Act, as the Court does here, any attorneys' fee award remains subject to the court's discretion.  See Gracie v. Gracie, 217 F.3d 1060, 1071 (9th Cir. 2000) ("[T]he Lanham Act *permits*, but does not mandate, an award of attorneys' fees to a prevailing party in exceptional circumstances."); accord First Nat'l Bank of First Nat'l Bank S.D., 679 F.3d 763, 771 (8th Cir. 2012) ("Because [§ 1117(a)] states that the court 'may' award attorney's fees in exceptional cases, the district court retains discretion as to the award of attorney's fees even if it finds a case to be exceptional.").  Under the particular circumstances of this case, the Court declines to award any attorneys' fees to Rehrig under § 1117(a).  Gerawan's Lanham Act claim was dismissed at the very outset of this case, and to the extent that Rehrig spent energy contesting it, it seems to have been minor, as Gerawan's Lanham Act claim was a minor part of this case.  Indeed, Rehrig's briefing

---

[10] To reiterate, the Court does not find Gerawan's argument that the Court and Rehrig misconstrued its Lanham Act claim persuasive.  The scope of Gerawan's claim was defined by its own complaint.  (See Doc. 1 at ¶ 53).  Moreover, to the extent that the Court construed Gerawan's claim as possibly alleging "reverse palming off," it was only because the only case law Gerawan cited to in its opposition papers was *a case involving reverse palming off*.  See GNI Waterman LLC v. A/M Valve Co. LLC, Case No. CV F 07-863 LJO TAG, 2007 U.S. Dist. LEXIS 68715, at *8-13 (E.D. Cal. Sept. 7, 2007).  Therefore, even if Gerawan's claim was misconstrued, the blame rests with Gerawan for failing to articulate the basis for its claim in any clear fashion.

on the claim totaled no more than three pages.[11]  (Doc. 11 at 18-20; Doc. 21 at 9-10.)  Moreover, much of Rehrig's briefing ultimately was not relied on by the Court.  The Court therefore concludes that fee-shifting by way of an attorneys' fees award under § 1117(a) is unwarranted.

### C.   28 U.S.C. § 1927 and Inherent Power

Under § 1927, a court may sanction an attorney for multiplying the proceedings unreasonably and vexatiously.  28 U.S.C. § 1927.  An attorney's conduct is unreasonable and vexatious within the meaning of § 1927 when it is done in subjective bad faith or with a certain degree of recklessness.  See B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002).  "[W]hen an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing the opponent," sanctions may be authorized under § 1927.  In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996).  See also B.K.B., 276 F.3d at 1107 (attempting to clarify the circumstances in which sanctions may be imposed under § 1927).

A court may also impose sanctions under its inherent power for conduct taken in bad faith or for conduct tantamount to bad faith.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991); Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001).  Bad faith conduct includes a broad range of litigation abuses, including willful deception of the court and reckless assertions of fact or law for a frivolous or otherwise improper purpose.  See Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001); Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983).  Nevertheless, the bad faith requirement is a "high threshold."  Mendez v. County of San Bernardino, 540 F.3d 1109, 1132 (9th Cir. 2008) (citation omitted).  And, similar to sanctions under § 1927, conduct that is merely negligent or inadvertent will not suffice.  See Fink, 239 F.3d at 993.

Here, Rehrig insists that the Court should award it attorney's fees under § 1927 and the Court's inherent power because Gerawan unreasonably multiplied the proceedings by filing numerous baseless motions, such as Gerawan's motions for reconsideration.  The Court has already determined, however, that Gerawan's motions, although numerous indeed, were not patently frivolous.  (See supra Section II.A.2.b.)  Nor is there sufficient evidence to suggest that Gerawan acted for some improper purpose or

---

[11] There is no indication as to how much time, specifically, was spent researching and drafting this part of Rehrig's brief.

in bad faith by filing these motions.  (Id.)  Accordingly, the Court declines to impose sanctions against Gerawan and its counsel on this basis.

Rehrig also argues that the Court should award it attorney's fees under § 1927 and the Court's inherent power because Gerawan unreasonably multiplied the proceedings by repeatedly shifting the factual and legal basis for its common law unfair competition claim.  Rehrig stresses four points in this regard.  First, Rehrig notes that Gerawan presented a laundry list of allegations in its pretrial statement despite the Court's clear instruction to be precise and to distill its claims fully.  Second, Rehrig argues that when threatened with dismissal, Gerawan asserted a theory of liability predicated on passing off even though it knew that it had no admissible evidence to support such a claim.  Third, Rehrig argues that Gerawan then inappropriately attempted to expand the scope of its common law claim to include a misappropriation-type theory of liability.  Fourth, Rehrig maintains that Gerawan was finally forced to dismiss this case because the Court ruled that misappropriation would not be tried before the jury and Gerawan knew that its existing claims lacked merit.

Gerawan counters that its common law claim for passing off was not frivolous and that it had evidence to support such a claim.  Gerawan notes in this regard that the Court, after receiving briefing from the parties on this matter, declined to grant Rehrig summary judgment *sua sponte* on this claim.  Gerawan further argues that its decision not to proceed to trial on this claim should not be interpreted as a concession that its claim lacked merit.  Gerawan asserts that it simply accepted the Court's offer to dismiss its passing off claim in light of the fact that even if it prevailed at trial, it would not receive the relief it really wanted if it could not proceed with a misappropriation theory of liability.  Gerawan insists that it thus made the rational and responsible decision to forego a costly trial, a decision that in Gerawan's opinion, it should not be punished for.

Gerawan's argument that its common law claim for passing off was not frivolous is well-taken, but it does not end the Court's inquiry.  Even if the claim was not plainly frivolous, sanctions may still be levied against Gerawan if it raised and pursued its claim recklessly and for some improper purpose, such as harassment.  See Fink, 239 F.3d at 992 ("For purposes of imposing sanction under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala

21

fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.") (citations and internal quotation marks omitted); In re Keegan Mgmt. Co., 78 F.3d at 436 (sanctions may be imposed under § 1927 when an attorney "argues a meritorious claim for the purpose of harassing an opponent") (citations omitted).

Having exhaustively reviewed the record, the Court does not find the degree of recklessness or bad faith necessary to sanction Gerawan or its counsel under § 1927 or the Court's inherent power.  To be sure, the record reveals that Gerawan pursued its common law claim in a frustratingly sloppy and unfocussed manner.  By way of example, Gerawan did not include several witnesses and exhibits in its pretrial statement that would have helped Gerawan establish its common law claim.  It was only after the parties filed their joint pretrial statement, and only after the Court attempted to narrow Gerawan's common law claim, did Gerawan feel the need to include this evidence as part of the case.  (See Doc. 172, Pl.'s Request for Modification of the Pretrial Order.)  This suggests that pursuing this claim was nothing but an afterthought for Gerawan.

Nevertheless, the context in which this all arose gives the Court pause.  Briefing on the merits of Gerawan's unfair competition claims was abbreviated and done in a compressed timeframe.  Some of the blame for this can be attributed to Rehrig; had Rehrig challenged Gerawan's common law claim on summary judgment and not waited until the parties' joint pretrial statement to raise its concerns, the matter could have been briefed with greater focus and precision.[12]  As such, it is difficult to tell from the record whether Gerawan simply made a sloppy, unsuccessful, yet good faith attempt at articulating its claims or whether something more nefarious was afoot.  The fact that Gerawan chose to accept *the Court's* suggestion that it dismiss its claims and appeal immediately instead of proceeding to trial does not convincingly show that it was one way or the other.

The Ninth Circuit has reiterated that a district court's authority to sanction attorneys and parties under § 1927 and the court's inherent power must be construed "strictly" and "must be exercised with restraint." Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1223 (9th Cir. 2010); Dreiling v. Peugeot Motors of Am., Inc., 768 F.2d 1159, 1165 (9th Cir. 1985).  Accordingly, while the

---

[12]  As demonstrated by its answer, Rehrig was fully aware of Gerawan's common law claim from the beginning of this case.  (See Doc. 29 ¶ 1.)

Court agrees with Rehrig that Gerawan's common law unfair competition claim has had the feel of a game of "whack-a-mole," the Court declines to impose sanctions against Gerawan and its counsel on this basis because the Court is not entirely convinced that Gerawan pursued its claim for the purpose of harassing Rehrig or advancing some other improper purpose.  This of course should not be read as the Court approving Gerawan's frustratingly unfocussed conduct.

**III.     CONCLUSION**

In accordance with the above, the Court GRANTS IN PART and DENIES IN PART Rehrig's motion for attorneys' fees and costs as follows:

1.     Rehrig is entitled to an award of attorneys' fees under 35 U.S.C. § 285 for combatting in its motion to compel and motion for summary judgment Gerawan's representations regarding Mr. Gerawan's assignment of his patent rights.[13]

2.     The Court will defer ruling on the amount of this award.

3.     By no later than **December 20, 2013**, Rehrig shall provide the Court with additional briefing in accordance with Section II.A.3.b.ii of this order.

4.     Gerawan may file a response to the reasonableness of Rehrig's additional briefing by no later than **January 10, 2013**.

5.     Rehrig's motion is DENIED in all other respects.

IT IS SO ORDERED.

Dated:   __**December 10, 2013**__          ____**/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

---

[13] To be clear, the award does not just cover the fees associated with the motions themselves.  It also includes any other efforts tied to the motions that can be reasonably traced to combatting Gerawan's litigation misconduct.  This would include, for example, a meet and confer effort by counsel prior to the filing of the motion to compel regarding the "Confirmation of Assignment" document.

23